**In re EMANUELI.**

**Patent Appeal No. 3119.**

Court of Customs and Patent Appeals.
Dec. 4, 1933.

Harrison F. Lyman, of Boston, Mass., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming the decision of the examiner in the rejection of claims 12, 13, 14, and 17 of appellant's application for a patent on an improvement in means for maintaining oil pressure in high-tension electric cables.

In substance, the invention disclosed by appellant's specification and drawings consists of a combination of an electric cable, having ducts or means for the flow of oil longitudinally thereof, which ducts or means are filled with oil; the air having been previously exhausted therefrom. In order to allow for ex-

pansion and contraction of the oil in the cable, due to changes in temperature, the applicant provides a feeding reservoir containing a large quantity of oil, which oil is connected with the oil in the interior of the cable. This feeding reservoir is composed of elements, or cells, exposed to atmospheric pressure, and diaphragms on both sides of such cells; these diaphragms being corrugated so as to increase the amount which they can bend or yield, in response to changes of oil pressure. The diaphragms in each cell are spaced parallel to, and some distance from, each other, by a rigid metal holder. Each of these cells is hermetically sealed and exhausted of air before being filled with oil. As many cells as are required may be combined in this feeding reservoir. The oil in these cells, when expansion in the cable occurs, will push the diaphragms outwardly, and when expansion is reduced, atmospheric pressure will cause the diaphragms to resume their original position, or, perhaps, be contracted. The inventor proposes to have no air in his cable, or in contact with the oil in these feeding reservoirs, at any point.

In addition, the inventor provides for a number of so-called pressure reservoirs, which are to be placed along the line of the cable wherever needed, and which are of a different type. In these, the oil is contained within an hermetically sealed, rigid, walled receptacle. In the interior of this receptacle, and immersed in the oil, are a number of thin, flat cells, containing a gas or air, and each composed of a rigid rim and a corrugated membrane on each side of the cell. The oil in these pressure reservoirs is also connected with the oil in the cable. When expansion of the oil in the cable occurs, it will be forced out of the cable and into these pressure reservoirs, where it compresses the sides of the inclosed air cells. As the expanding force on the oil in the cable is reduced, the oil is again forced out of the pressure reservoir into the cable by the expansion of the air cells to their original shape.

The inventor has furnished several affidavits, by which it is shown that by this system, which is most generally applied to underground cables, the voltage which may be safely carried by such a cable has been increased from 66,000 volts to approximately 132,000 volts. The affidavits also tend to show many advantages in the transmission of high-tension electrical current.

A considerable number of claims relying upon the specific structure of appellant's

combination have been allowed by the patent office. Claims 12 and 17 are thought to be typical of the rejected claims:

"12. In a high tension electric cable installation, the combination of a sheathed cable having a passage therein containing insulating fluid which is freed of air, variable capacity pressure reservoirs which are freed of air and sealed against the admission thereof, means connecting the reservoirs to the passage at spaced intervals along its length, said reservoirs and connecting means containing insulating fluid under pressures which vary with change of temperature of the cable, a variable capacity feeding reservoir which is freed of air and sealed against the admission thereof, and which contains insulating fluid and maintains it under a substantially constant pressure, and means connecting the feeding reservoir with the passage in the cable whereby it receives the fluid from the passage and the pressure reservoirs as the pressure therein rises due to heating of the cable, and feeds it back thereto as the cable cools."

"17. In a high tension cable system, the combination of a length of sheathed cable having a longitudinal passage therein from which air is excluded and which is filled with air freed insulating fluid under pressure greater than that of the atmosphere and through which the flow of fluid is slow, a plurality of pressure reservoirs, each comprising an hermetically sealed casing which contains fluid under pressure substantially the same as that in the cable passage and a plurality of sealed cells, the exterior walls of which are subjected to the pressure of the fluid in the casing, conduits of low resistance to flow of fluid connecting the casings in parallel spaced relation to the cable passage, a feeding reservoir of relatively large capacity which contains fluid and has expansible walls, the exterior surfaces of which are exposed to substantially atmospheric pressure, and a conduit connecting the feeding reservoir and cable passage, whereby the fluid, on expanding, first flows into each of the pressure reservoirs, gradually building up the pressure therein, all of said reservoirs subsequently discharging fluid in parallel back into the cable passage from which it flows into the feeding reservoir."

The examiner rejected claims 12, 13, 14, and 17, "solely on the ground of old combination." In doing so, he made reference to the following patents:

British patent 114,414, acc. October 10, 1918, 173-264.

British patent 29,756, December 24, 1913, 173–264.

Ober et al., 1,775,776, September 16, 1930, 173–268.

Bingay, 1,562,428, November 17, 1925, 220–85.

Emanueli, 1,662,107, March 13, 1928, 173–266.

He held that "the fundamental system is shown in Watson," and that the improvements which appellant shows over Watson are those which have already been shown and embodied in Pirelli, Bingay, and Ober. The British patents referred to above are, respectively, Pirelli and Watson.

The Board of Appeals, as has been said, affirmed the examiner as to his rejection of said four claims, and again listed the references cited by the examiner. However, in its discussion of the claims, the board discussed the reference Watson only, and expressed the opinion that, inasmuch as the rejected claims seem to have been based upon a structure in which "there need be no difference in structure between the feeding and pressure reservoirs," appellant's said claims were anticipated by Watson. The board was of the opinion that a multiplicity of Watson's feeding reservoirs along the cable and at the end thereof were believed to be the equivalents of appellant's feeding and pressure reservoirs.

We have held that where the Board of Appeals has affirmed the decision of the examiner in rejecting the claims of an applicant on certain grounds, and upon certain named references, which references are also cited by said board in its decision, the affirmance should be held to have the legal effect of a rejection upon the grounds and references cited by the examiner, and not expressly reversed by the board. In re Wagenhorst, 64 F.(2d) 780, 20 C. C. P. A. 991.

We shall therefore consider that the various references cited, and their applicability, are before this court at this time.

It will be observed from a reading of said claims 12, 13, and 14 that, while these claims include two types of reservoirs, namely, feeding and pressure, there is nothing in the claims that indicate that these reservoirs shall differ in method of construction. Take, for instance, claim 12. This claim mentions "variable capacity pressure reservoirs which are freed of air and sealed against the admission thereof," spaced along the cable, and a "variable capacity feeding reservoir which is freed of air" and sealed, and which contains insulating fluid. It thus appears, from this claim, that any system which contains a number of pressure or feeding reservoirs, whichever they may be called, and which reservoirs contain oil or insulating fluid and are freed of air, will satisfy this claim. In other words, the claim is broad and will include any system which uses reservoirs containing oil under pressure, and freed of contact with air. The element of air-containing cells is entirely omitted from these claims.

The Board of Appeals was of opinion, as has been said, that the Watson reference disclosed reservoirs upon which these claims will read. Watson shows an electric cable with a passage for insulating fluid therein, and which insulating fluid is in communication with a cylindrical pressure reservoir (h), in which said reservoir insulating fluid is contained, and on top of which fluid a piston is placed, which is caused to press upon said insulating fluid in said reservoir by means of a weighted arm. Watson also shows other reservoirs for taking care of expansion and contraction, these consisting of air chambers containing air under pressure, which chambers may be placed along the line of the cable, as needed.

The appellant insists that one of the great advantages of his invention is the fact that air is not permitted to come in contact with the oil in the cable, and has demonstrated, we think, by affidavits he has offered, that the presence of air in the cable, even in small quantities, is highly injurious. Appellant contends that in Watson's system the air pressure devices are obviously not anticipations of his pressure reservoirs, because in them air is in contact with the oil. As to the Watson pressure reservoirs, in which a piston and weighted arm are used, he contends that oil will seep upwardly around the edge of the piston and that the piston will ultimately reach the bottom of the cylinder, rendering the device inoperative.

It is obvious that Watson long antedated the appellant in claiming the patentability of a combination of an oil containing cable, connected with a series of oil feeding and pressure reservoirs. It only remains to be seen whether the appellant has made such improvements thereon as to amount to a patentable combination.

Even if the Watson pressure reservoirs (h) are not anticipatory of appellant's reservoirs, claimed in said rejected claims, because of contact with the air and the other defects

mentioned, we are of opinion that a pressure reservoir, such as appellant claims in said rejected claims, namely, an expansible reservoir, filled with an insulating fluid and freed of air, is fully shown by the other references cited.

Bingay shows a transformer tank freed of air and full of insulating fluid, which, by disclosed means, is capable of expansion and contraction to accommodate changes in temperature in the transformer tank.

The reference Ober is particularly applicable. Ober shows an oil filled pressure tank of the bellows or expansive type, freed of air and sealed against the admission thereof, and which expands or contracts to accommodate the expansion of the insulating fluid inside the joint of a high voltage single conductor cable.

These references disclose that the feeding reservoirs of the appellant are not new in the art. The combination which the appellant has made of his two types of reservoirs, one of which contains expansible air cells, has been claimed by him, and claims have been allowed him by the patent office therefor. These are based upon the specific structure disclosed by him. However, when his claims are so broad as to include a series of oil-filled, air-freed reservoirs, without any further limitation therein, they invade a field already shown by the art.

Claim 17 has been rejected by the Board of Appeals for the reason, as it is said: "Claim 17 is directed to the same structure but fails to state that the walls of the cell are flexible. This claim, therefore, appears to be merely an incomplete statement of the structure of claims 15 and 16 and is not regarded as patentably different therefrom, besides being incomplete as to an essential feature." A reading of this claim discloses that, while the applicant is claiming pressure reservoirs which contain a plurality of sealed cells, the exterior walls of which are subjected to the pressure of the fluid in the casing, there is no statement of what is contained within these cells, that the sealed cells are compressible, or the material or structure of the same. Hence, as the Board of Appeals has said, the statement of the claim is incomplete. Any sort of a sealed cell contained in the pressure reservoir would satisfy this language.

The decision of the Board of Appeals must, therefore, be, and is, affirmed.

Affirmed.