164

### In re ROSS.
#### Patent Appeal No. 3199.

Court of Customs and Patent Appeals.
.Jan. 22, 1934.

Blair, Curtis & Dunne, of New York City (Edward G. Curtis and William T. Kniesner, both of New York City, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

The Board of Appeals of the United States Patent Office affirmed the action of the Examiner in denying patentability, in view of the prior art, of claims numbered 8, 10, 12, 13, 14, 15, 16, 31, 32, 33, 34, 40, 41, 60, and 61 of appellant's application for a patent on an automatic controlling apparatus. The Examiner allowed fifteen claims on different features of the device. From the decision of the board, appeal is taken to this court.

Claim 61 was regarded as illustrative by the board, and will be so regarded by us, and it follows:

"61. In a controlling apparatus, in combination, a housing carrying a pressure-responsive element, means for attaching said housing to a radiator and for connecting the interior thereof to said pressure-responsive element, a temperature-responsive element carried by said casing and exposed to the atmosphere, a heating element, a switch for controlling the flow of electrical energy to said heating element, means causing said temperature-responsive element to close said switch in response to a predetermined drop in temperature, and means under the control of said pressure-responsive element for preventing closure of said switch if the pressure is above a predetermined value."

The references relied on by the Examiner are: Hadaway, 1,093,126, April 14, 1914; Farmer, Jr., 1,217,928, March 6, 1917; Forshee, 1,416,009, May 16, 1922; Speck, 1,437,119, November 28, 1922; Gannon et al., 1,500,382, July 8, 1924.

The application relates to an automatic controlling device, in particular, one used in connection with an electric heater element for generating steam in radiators. The heater device is energized normally by a thermostat which is responsive to room temperature. Whenever the steam pressure in the radiator rises beyond a predetermined point, certain bellows, which are steam pressure operated, then operate to open the main switch, which permits a lowering of the temperature in the radiator. The main switch rotates on a shaft, and on opposite sides of said switch are terminals to which the control circuit is connected. The switch is closed by energization of

a coil, and is returned to position by the action of a spring.

The Examiner discussed the references and applied them to appellant's disclosure. After allowing the fifteen claims above referred to, the Examiner rejected the broad claims as not being inventive in view of the prior art.

The Board of Appeals did not discuss the references in detail. It answered appellant's arguments before it, and held, in substance, that the rejected claims were so broad as to cover nothing that was inventive, and affirmed the action of the Examiner in rejecting the claims. The board also, speaking generally of the features of appellant's application, said:

"Appellant contends that the examiner has not shown that it is old to keep down the pressure until the room is sufficiently warm so that the room thermostat will close the cut-off but appellant is of course aware of the fact that for many years it has been customary to control the temperature in residences by room thermostats and thermostats attached directly to the heater simultaneously employed. He also will not question the fact that electrical thermostats for both purposes have long been used. When steam heat is employed it is common knowledge that the pressure of the steam is often relied upon to control the fire in the heater rather than a thermostat. Broadly, therefore, all that appellant has done is to apply to a single radiator the general principle that has long been employed with furnace control. Indeed since blowers have been introduced into the heating art for burning oil and small sizes of coal it is common knowledge that both room thermostats and furnace thermostats have been placed together in the circuit of the blower motor so that the blower would not function when either the temperature of the rooms or the temperature of the fluid in the heater was too high.

"Claims 33, 34, 60 and 61 above mentioned therefore substantially distinguish over well-known practices, of which appellant must be aware, only by the limitation that the two controls are connected to a single switch. Of course where one control is in the room and the other in the basement it is more convenient to employ a plurality of switches in series but where the control is substantially at the same point as would be necessary in applying an individual heater to a radiator we consider that it would be obvious that the controls might be employed on the same switch and in our opinion it does not involve invention to connect them in this manner. * * *

"If the use of appellant's control is left out of consideration we believe that the details, such as an electro-magnet and other minor features found in certain claims, are only such means as are frequently employed by electrical experts in making automatic switches and that they are devoid of invention."

Since the board affirmed the action of the Examiner in rejecting the claims upon the references referred to, we think it worth while to briefly state the position of the Examiner with reference to such prior art.

Hadaway relates to a temperature regulator and discloses a thermostatic control for the heating element in which the thermostatic switch is short circuited at a given point by the closure of the main switch by a solenoid.

Farmer relates to a governor magnet and discloses a thermostatic control for a heating element, the control circuit being connected on one side of the source and on opposite sides of the main switch.

Forshee relates to electric ranges and discloses a standard electromagnetic thermostatic control circuit in which the thermostat operates to insert additional resistance in the line.

The Examiner regarded Speck as the basic reference against most of the rejected claims. Speck's patent is for an electrically operated heating unit, and the drawings show the manner in which the radiator contains the heating medium in vacuum. The heating means is controlled by independent temperature control and pressure control switches which are in series and control the energization of the heating element.

Gannon is a temperature controlling system, and was intended particularly to apply to heating systems for buildings, and discloses a radiator heating element controlled by a control circuit in which are found a room thermostat and a safety thermal device. The Examiner thought the safety thermal device of Gannon might be either pressure or temperature operated as is shown clearly in the prior art.

Claims 8, 15, 31, 33, 34, 40, and 41 are intended to cover the controlling apparatus consisting of a main switch, which switch is operated by a controlling circuit comprising a temperature operated and a pressure operated switch. These claims the Examiner concluded were anticipated completely by the patent to Gannon. He also points out that

in Gannon the control circuit comprises a thermostatic switch and the "safety thermal device" and states that "the safety thermal device may be either pressure or temperature operated. Both types of operation are common in the art, and it is held that one is the full patentable equivalent of the other." The Examiner then states that in view of the disclosure in Speck there would be no invention in substituting a pressure controlled safety switch for the "safety thermal device" in Gannon, if the latter be considered as being limited to a thermostatic switch.

Claims 10, 16, and 32 are drawn to a pressure and thermostat control circuit connected on one side of the line and to the opposite sides of the main switch. This feature, the Examiner states, was shown in Farmer. The Examiner concluded that it was not an inventive act to substitute for Farmer's thermostatic control the combined pressure and temperature control of Speck or Gannon and that, therefore, claims 10, 16, and 32 were rejected on Farmer in view of either of the patents to Gannon or Speck.

Claim 12 covers a pressure controlled switch in a control circuit which is connected to the main circuit at points on opposite sides of the main switch. As before stated, the Examiner concluded that this feature was shown in Farmer. The Examiner further rejected the claim as being unpatentable over Farmer in view of Speck, the latter of which shows the use of a pressure controlled switch in a control circuit.

Claim 13, according to the view of the Examiner, showed nothing inventive over either of the patents to Forshee, Gannon, or Hadaway.

Claim 14 was rejected on the patent to Farmer. The Examiner concluded that it was immaterial whether the main switch be operated directly by an electromagnet as the claim called for, or by a spring actuated by an electromagnet.

Claims 60 and 61 are drawn to cover that feature of appellant's device described in the claims as a "temperature-responsive element carried by said casing and exposed to the atmosphere," and a pressure-responsive element having to do with the control of the main switch. The Examiner rejected these claims on Speck and said:

"Claims 60 and 61 are rejected on Speck. The details of these claims are mere obvious details of structural design lacking in patentable value."

The appellant has here stressed with great emphasis that the board's opinion is "legally improper and unworthy of serious attention" because the board did not discuss the prior art relied upon by the Examiner as ground of rejection but, according to the appellant, affirmed the rejection by "vaguely referring to alleged well-known practices or to common knowledge" which "amounts to resting the decision upon unproven assumptions outside the record."

In accordance with our decision in Re Wagenhorst, 64 F.(2d) 780, 20 C. C. P. A. 991, we are of the opinion here that the board's decision affirms the rejection of the Examiner upon the references cited. Under these circumstances, it is not necessary for us to discuss or pass upon the merit or lack of merit in appellant's above contentions with reference to the board's reliance upon common knowledge and well-known practices.

In passing, we will add that in instances where the board affirms the Examiner, as it has done in the instant case, and in Re Wagenhorst, supra, if it is of the opinion that the prior art cited by the Examiner anticipates the applicant's claims in all that is inventive, it should be so stated in order that no misunderstanding will arise. This practice would be very helpful to this court in the performance of its duties.

The appealed claims were properly rejected by the Examiner upon the prior art cited, and we agree with the conclusion of the board that such claims were properly rejected by the Examiner, and, therefore, affirm the decision of the Board of Appeals.

Affirmed.

LENROOT, Associate Judge, specially concurs.