## In re BOWLES.
### Patent Appeal No. 3307.

Court of Customs and Patent Appeals.
June 12, 1934.

David Rines, of Boston, Mass., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

The title of the application for patent here involved is "Acoustic-Electric-Energy Converter." The specification says that the alleged invention "though having fields of more general usefulness, is more particularly related to devices for converting or translating acoustic into electric energy." Certain claims stand allowed. Others numbered 1, 2, 8, 9, and 11 were rejected by the Examiner of the United States Patent Office whose decision was affirmed by the Board of Appeals. Following the Board's decision, appellant sought and obtained permission to amend, for purposes of appeal, by substituting for the disallowed claims two others, numbered respectively 12 and 13, which the board held to be directed to the same subject-matter as those first rejected. Upon the formal rejection of these two latter claims by the Board, the instant appeal to this court was taken.

All the disallowed claims—both the old and the new—seem to be technically embraced in the appeal. We assume that this course was followed as a matter of precaution. At the hearing appellant formally requested dismissal of the original disallowed claims and the consideration of those substituted as described. Since the latter received consideration by the Patent Office in due and proper statutory form, they are properly before us, and the motion of appellant is allowed.

The claims in dispute read as follows:

"12. A sound-wave detecting instrument having, in combination, a device comprising

a membrane that is capable of vibrating in a sound field and the weight and the dimension of which are such that the membrane shall follow faithfully, during its vibrations in the said field, the instantaneous sound variations of the said field without substantial alteration of the said variations from what the said variations would have been in the absence of the said device, and means controlled by the vibrations of the membrane for detecting the vibrations of the membrane.

"13. A sound-wave detecting instrument having, in combination, a device comprising a membrane that is capable of vibrating in a sound field and the weight and the dimension of which are such that the membrane shall follow faithfully, during its vibrations in the said field, the instantaneous sound variations of the said field without substantial alteration of the said variations from what the said variations would have been in the absence of the said device, means for projecting energy rays in a direction at an angle to the vibratory path of the membrane, whereby the energy rays will be intercepted variably in accordance with the position of the membrane in its vibratory path, and means controlled by the position of the membrane in its vibratory path for detecting the vibrations of the membrane."

The Examiner cited the following five references: Thomson-Houston Co. (Br.), 241153 of 1925; Graham et al. (Br.), 271125 of 1927; Telefunken Ges. (Ger.), 444673 of 1927; Snook, 1681376, August 21, 1928; DeForest, 1726289, August 27, 1929.

■■ The Board of Appeals referred specifically to only Graham et al. and DeForest, the subject-matter of claim 12 being rejected by it upon Graham et al., and the subject-matter of claim 13 upon Graham et al. taken in connection with DeForest. However, the other references were not overruled by the Board and so they remain as references which we may consider. In re Wagenhorst, 64 F.(2d) 780, 20 C. C. P. A. (Patents) 991.

It is proper to say that the allowed claims comprise a group embracing a limitation to the use of an occulting vane, and it was solely on account of this limitation that they were allowed. Appellant, therefore, insists that he is not broadly protected as to the device which he claims to have invented, and such protection is sought in the appealed claims.

The Graham et al. patent (British) relates to telephone receivers. It includes a "movable sound producing electrode in the form of a membrane or diaphragm" (de-

scribed in the specification as "exceedingly light in character"), arranged for free vibration between two fixed electrodes which "may be formed as metal gauze screens." In one of the drawings of this patent a movable electrode is shown connected at its circumference to the central portion of a flexibly suspended ring "which may be made of great or small width and of metal."

The DeForest patent is entitled "Diffraction Microphone," and is stated to relate "broadly to microphone construction whereby sound waves are converted into electrical current variations." One of the figures of its drawings, disclosed a diaphragm, the vibrations of which, the Solicitor for the Patent Office avers, may be detected by its variation in the light received upon a photo electric cell from a lamp. Appellant questions the correctness of the construction of this feature of the DeForest patent by the Patent Office tribunals, and this matter will receive later attention.

This patent was apparently cited only as a reference with respect to appellant's projection of "energy rays" as described in claim 13, supra, or, to use the designation of his brief, "appellant's specific recording mechanism." The DeForest patent is conceded by appellant to be in the "sound-detecting" field.

The other references have to do with the utilization of variations in an energy beam to detect the motion of a diaphragm and require no detailed analysis.

Appellant lays greatest stress, particularly in his supplemental brief, filed by permission of the court after the oral argument, upon claim 12.

He insists that the device of Graham et al. is what is commonly referred to as a "loud-speaker"; that it is not a sound detecting, or sound measuring device, but a sound reproducing device, whose function and purpose is entirely different from the function and purpose of his own device.

In oral argument before this court appellant's counsel used the "flared horn" element of a loud speaker, modeled upon one of the figures of the Graham et al. drawings, and sought to illustrate to the court how appellant's device would operate to measure or detect the sound reproduced by the Graham et al. device, in the sound field lying within the circumference of the flared horn.

We are quite convinced that Graham et al. and appellant have different general purposes in view, but the question is whether appellant has, by his claims as drawn, suc-

ceeded in so defining his structure, as a structure (both claims being apparatus claims), that the Graham et al. patent does not in terms anticipate it.

The critical feature of appellant's device, it seems to us, lies in the delicate membrane which he uses. The particular one displayed during argument of the case was less than an inch in diameter and so thin as to be scarcely visible except when brought relatively near the observer. It was, of course, explained that different sound fields would require different sizes of membranes, but, as we understand it, in the practical use of the instrument, whatever may be the diameter of the membrane, assuming it to be circular in shape, or whatever its dimensions if otherwise shaped, it must always be exceedingly thin, and of a lightness which renders its weight negligible as compared with anything to which weight is customarily ascribed.

In certain of the original disallowed claims the membrane was referred to as being "substantially weightless," and the specification so describes it, explaining the necessity for lightness by saying:

"Indeed, if the membrane could be made ideally weightless, it would move exactly in unison with the surrounding air, and would exactly follow the vibrations of the air particles during the transmission of a compressional wave. Its own identity would then be lost in the operation, and it would introduce no discontinuity in the path of the compressional wave. This ideal arrangement can be approached, in practice, by making the membrane sufficiently weight-less."

The principal opinions of the tribunals of the Patent Office were written upon the claims as originally phrased, and evidently it was not thought by them that the phrase "substantially weightless" distinguished appellant's membrane from the "exceedingly light" membrane of Graham et al., and we are unable to hold that their conclusions in that respect are erroneous.

Furthermore, we are unable to find in the language of the claims as now phrased any clarity or definiteness of description respecting the membrane which renders it possible to distinguish over Graham et al.

It is argued that the language is clear to those skilled in the art. This may be true, but we have also to consider whether it is clear enough to distinguish from the prior art. We are unable to find that it does.

There remains to be considered the limitation in claim 13, respecting the so-called "recording mechanism" of which the DeForest patent was held anticipatory.

We have carefully considered appellant's arguments to the effect that the Board of Appeals misunderstood or misconstrued the DeForest disclosure. This is a matter upon which we hesitate to place our judgment against that of the experts of the Patent Office, but, assuming, without holding, that, in some particulars, there may have been error in the conclusion as to operation of the DeForest device, we are unable to discern wherein there was error in the specific application made of the patent.

The appeal as to claims numbered 1, 2, 8, 9, and 11 is dismissed, and the decision of the Board of Appeals as to claims numbered 12 and 13 is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate.