26 C.C.P.A. (Patents)

## In re WIDMER.

### Patent Appeal No. 4021.

Court of Customs and Patent Appeals.
March 6, 1939.

James A. Carr and Joseph J. Gravely, both of St. Louis, Mo., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims, Nos. 6, 7, 10, 11, 15 to 20, inclusive, 22, 24, 27 to 35, inclusive, and 38 to 47, inclusive, in appellant's application for a patent for an alleged invention relating to cleaning preparations for use in cleaning glazed and porcelain ware, aluminum ware, and other household utensils, and a process for making such preparations.

The principal part of appellant's cleaner consists of fine particles of limestone. Some of the particles are small enough to pass through a No. 325 United States Bureau of Standards' sieve, and others are too large to pass through a No. 200 sieve.

It is stated in appellant's application that a household cleaner composed of particles of limestone or other soft mineral sufficiently small to pass through a No. 325 sieve, due to the fineness of the particles, is not effective in removing dirt and grease, and that, by the addition of particles of such soft minerals which are too large to pass through a No. 325 sieve, the abrasive characteristics of the cleaner are enhanced sufficiently to make it operate efficiently for its intended purpose without any appreciable abrasion or scratching of the articles on which it is used.

It appears from the record that appellant's mixture is free-flowing when dry, but is capable of becoming plastic when wet, and that it is the quality of plasticity which enables the larger particles in the mixture to serve as a mechanical scraper in the scouring operation.

The action of such cleaning preparation is purely physical and mechanical, and dirt and grease are removed by scour-

ing. When used, the "cleaner is moistened with water, for instance, by application of a wet cloth, and rubbed on the surface to be cleaned."

The limestone referred to in appellant's application is "essentially of calcium carbonate, whether in the form of calcite or in the form of aragonite."

Appellant's preferred proportions of limestone particles are stated in his application to be "less than one per cent large enough to be retained on the No. 100 sieve, about 10 per cent passing the No. 100 sieve and retained on the No. 200 sieve, and about 10 per cent passing the No. 200 sieve and retained on the No. 325 sieve, all the remaining limestone particles passing the No. 325 sieve."

Appellant further states in his application that—

"Although the calcite of limestones has a hardness of about 3, aragonite has a hardness of about 3.5 to 4 and is found in small proportions in most sedimentary organic limestones, the proportion increasing in the younger rocks. Small proportions of volcanic dust, quartz and other mineral impurities occur in some limestones. Likewise different forms of limestones and stones from the same quarry and even parts of the same stone commonly have particles of different degrees of friability. I have found that under pressure of rubbing, as in the cleaning operation, a considerable number of the calcite particles meeting substantial resistance *will break up along cleavage planes and thus danger of scratching the ware is further reduced*. With such a mixture, the soft and more friable particles are sufficient to deal with loose and soft dirt that yields to short rubbing, while the harder and less friable particles are brought into play to deal with the harder and more obstinate dirt. Where the hardness or softness of minerals or mineral particles is mentioned herein, either by a numerical designation or otherwise, I have reference to the hardness of such minerals as established in Mohs scale.

\*   \*   \*   \*   \*   \*

"I have found that *many other minerals*, which are *essentially calcium salts, and also other minerals softer than about 4.5* and substantially insoluble in water have in varying degree characteristics in common with the preferred limestone, and while I have hereinbefore described the insoluble mineral matter of my composi-

tion as being limestone, *it is feasible to substitute therefore other calcium salts softer than about 4.5 or other relatively soft suitable mineral substantially insoluble in water.* It is noted that limestone, fluorspar and all other materials mentioned herein are harder than 2.5." (Italics ours.)

It is further stated in appellant's application that particles of soft minerals, such as limestone, too large to pass through a No. 325 sieve may be mixed with "finely ground harder material of a kind commonly used, such as pumice, volcanic dust, feldspar and quartz."

One group of the appealed claims is directed to the hereinbefore described cleaning preparations, the action of which is purely physical and mechanical. Of that group, claims 6, 7, and 10 are sufficiently illustrative. They read:

"6. A cleaning preparation of substantially dry materials consisting mainly of crushed limestone particles of which upwards of fifty per cent by weight are small enough to pass a No. 325 U. S. Bureau of Standards sieve, from five per cent to thirty-five per cent by weight of said particles being too large to pass a No. 200 U. S. Bureau of Standards sieve, the remainder of said particles being small enough to pass the No. 200 sieve and large enough to be retained on the No. 325 sieve.

"7. A cleaning preparation of substantially dry materials consisting mainly of crushed limestone particles of which upwards of sixty per cent by weight are small enough to pass a No. 325 U. S. Bureau of Standards sieve, from one per cent to five per cent by weight of said particles being too large to pass a No. 100 U. S. Bureau of Standards sieve, the remainder of said particles being small enough to pass the No. 100 sieve and large enough to be retained on the No. 325 sieve.

"10. A cleaning preparation whose principal ingredient consists of particles of mineral harder than 2.5 and softer than 3.5, substantially insoluble in water and adapted to become plastic when wet, from five per cent to thirty-five per cent by weight of said particles being too large to pass a No. 200 U. S. Bureau of Standards sieve and the remainder of said particles containing particles of matter of colloidal character."

Appellant also discloses in his application cleaning preparations, consisting of the preparations hereinbefore set forth (composed of limestone and other mineral particles in specified proportions and sizes) in combination with certain detergent ingredients. Of those preparations, appellant's preferred composition is stated to be "about eighty-nine per cent by weight of particles of sedimentary limestone of organic origin and meeting the specifications as to relative proportions of various sizes hereinbefore set forth as the preferred mixture of mineral particles, to which are added about two or three per cent by weight of small particles of soap, together with about nine per cent by weight of particles of sodium salts easily soluble in water and having appreciable detergent value, of which salts about one or two per cent by weight consists of metasilicate of sodium."

The second group of the appealed claims is directed to those cleaning preparations, the action of which is chemical as well as physical and mechanical. Claims 22, 46, and 47 are sufficiently illustrative of that group. They read:

"22. A cleaning preparation whose principal ingredient consists of particles of minerals substantially insoluble in water but readily soluble in cold dilute hydrochloric acid, softer than 4.5 and adapted to become plastic when wet, from five per cent to thrity-five per cent by weight of said particles being too large to pass a No. 200 U. S. Bureau of Standards sieve, said preparation containing particles of soluble detergent of the group which consists of soaps and soluble alkali metal alkaline salts."

"46. A composition of substantially dry materials adapted for use as a cleaner when rubbed with water directly on the surface to be cleaned, consisting principally of particles of crushed limestone with which are mixed particles of detergent easily soluble in water between five and thirty-five per cent by weight of said limestone particles being too large to pass a No. 200 U. S. Bureau of Standards sieve and upwards of twenty per cent by weight being small enough to pass a No. 325 U. S. Bureau of Standards sieve, said detergent belonging to the group which consists of soaps and soluble alkali metal alkaline salts.

"47. A cleaning composition consisting of about eighty-nine per cent by weight of particles of sedimentary limestone of organic origin, about two or three per cent by weight of small particles of soap, and about nine per cent by weight of particles of sodium salts easily soluble in water and having appreciable detergent value, of which salts about one to two per cent by weight consists of metasilicate of sodium, less than one per cent of the limestone particles being large enough to be retained on a No. 100 sieve, about ten per cent passing the No. 100 sieve and retained on the No. 200 sieve, about ten per cent passing the No. 200 sieve and retained on the No. 325 sieve, and the remaining limestone particles passing the No. 325 sieve."

The references cited are: Stone (Br.), 18,782, Nov. 16, 1889; Scales, 1,728,082, Sept. 10, 1929; Reinle, 1,770,429, July 15, 1930; Huyzer (Br.), 335,005, Sept. 18, 1930; Gangloff, 1,870,311, Aug. 9, 1932; Scott, 1,879,953, Sept. 27, 1932; Gray, 1,-881,506, Oct. 11, 1932.

The British patent to Stone relates to improvements in the manufacture of soaps and cleansing compositions. The compositions are made of slate, marble, marble chippings, "or any rock, or other mineral substances" in an "immature state, prior to their development into harder substances." It appears from the patent that the *minerals were ground to a fine powder* and mixed with tallow, soap, oils or other greasy substances, and the mixture formed into bars or tablets. It is stated in the patent that the minerals should be "ground to a fine powder."

The patent to Scales relates to a process of making a washing liquid (the liquid to be used in conjunction with washing soaps for the cleansing of fabrics). The patentee discloses the use of commercial sodium carbonate and *finely pulverized limestone, mixed with water.* The mixture is stirred thoroughly and heated to a boiling temperature. The solution is then cooled, and a weak solution of calcium chloride is added thereto. After the mixture thus formed is thoroughly stirred, the excess calcium carbonate is permitted to settle to the bottom of the container. The liquid is then drawn off and is ready for use.

The patent to Reinle relates to a scouring soap powder for use in cleaning metal ware or removing stains from the skin. The patentee discloses a mixture consisting of vegetable oil, sodium hydroxide,

bicarbonate and carbonate of soda, a liquid alkaline solution, and a cementing material, such as volcanic ash. The mixture is first made into a solution, then dried, cut into bars, and ground into a fine powder.

The British patent to Huyzer relates to cleansing and polishing compositions for scouring and polishing metal. The patentee states that prior to his invention, the base of metal polishes was composed of finely divided silica; that the silica was dangerous to the health of the user; and that the object of his invention was to overcome such danger by providing a polish with a new base. He discloses the use of natural magnesite, containing only small quantities of silica. He expressly states, however, that it is essential that the magnesite be *"ground uniformly* to a *sufficient degree of fineness"* (italics ours); that it is essential that the magnesite be hard and crystaline in character; that it should be thoroughly ground into such a fine state that it would pass through a No. 250 sieve; that his powder might be used alone or with other cleaning powders; and that it could be applied by means of a damp cloth. The patentee also discloses a preparation in the form of a cream, which is composed of his powder and other ingredients.

The patent to Gangloff relates to a cleanser for aluminum. The patentee states that his cleanser "consists of a combination of substances that when moistened will produce ammonia in a nascent form and will have an abrasive action that will remove the foreign substances that are not dissolved by the ammonia, without scratching the metal." He discloses a mixture of "sesqui-carbonate of soda, trisodium phosphate, and ammonium chloride," which, he states, "produces a desirable rate of evolution of nascent ammonia from a *paste* of colloidal damp mix." (Italics ours.) The patentee further states that a colloidal silica mixed with powdered pumice "if worked out to a consistent uniformity, produces an abrasive that is effective and unobjectionable."

The patent to Scott relates to a cleansing composition *in the form of powder*. The composition is composed of "trisodium phosphate," "sodium metasilicate," "soap, preferably a sodium soap," and "soda ash" in various proportions.

The patent to Gray relates to a detergent. The patentee's detergent is composed of a mixture of a non-fatty emulsi-

fying cleansing compound and an abrasive ingredient, such as soapstone and volcanic ash. The patentee states that when volcanic ash is the "only abrasive ingredient of a non-fatty emulsifying detergent mixture, whose use necessitates the addition of a very large proportion of water, it settles very quickly to the bottom of the container in which the detergent is mixed with water and cakes there, and tends to cling to the surface of the article to be cleaned (marble, tile, terazzo, concrete) thus making it difficult to remove such volcanic ash from the container and from the article to be cleaned and also reducing the initial proportion of the abrasive to the chemical constituent"; that finely ground soapstone added to the detergent mixture prevents, to a considerable extent, the close adhesion between the volcanic ash and the article being cleaned; that the soapstone reduces the severity of the abrasive action of the volcanic ash, and aids in emulsifying the grease on the articles being cleaned; and that the degree of fineness of the volcanic ash depends upon the use to which the detergent is to be put. He further states that the finer the volcanic ash, the "less harsh its abrasive action," and the "finer the soapstone particles the more effective is their action in preventing compacting of the volcanic ash. I prefer to use both soapstone and ash of a degree of fineness which will permit passage through a 200 mesh screen."

All of the appealed claims were rejected by the tribunals of the Patent Office on the references of record.

In his decision, the Primary Examiner stated that the appealed claims were rejected as unpatentable over the patents to Huyzer, Gray, or Gangloff. We quote from his decision.

"Huyzer shows the use of finely divided mineral particles (magnesite) of the order of 250 mesh for cleaning purposes. Magnesite has a hardness of 3.5 to 4.5. The powdered material of the reference may be made plastic with water and may contain other well known cleaning agents such as soap. To substitute limestone for the mineral matter shown by Huyzer or to vary the size of the particles shown therein would not involve invention. The patents to Scales and Stone (British patent 18782 of 1888) show the well known use of pulverized limestone or marble for cleaning purposes. Furthermore it would not involve invention to add sodium sili-

cate, tri-sodium phosphate or sodium carbonate to the composition of Huyzer in view of the well known use of such ingredients in detergent compositions as shown by Scott, Gangloff, Reinle or Gray cited.

"Gray shows it is old to use a mixture of finely divided mineral matter, soda ash (sodium carbonate) and trisodium phosphate in a cleaning composition. Gangloff shows a similar composition. The substitution of powdered limestone for the mineral matter in the compositions of the references would not involve invention in view of the well known use thereof in detergent compositions as shown by Scales or Stone cited."

The examiner also rejected all of the appealed claims on the ground of undue multiplicity. Claims 30, 31, 34, 35, and 40 were rejected on the additional ground of new matter. Claim 45 was rejected on the ground of aggregation, the examiner holding that a "mere mixture of limestone and another abrasive material of the groups specified would be aggregative in character," and that each "ingredient would perform its well known function in the composition." Claims 10, 11, 15 to 20, inclusive, 22, 24, 27 to 35, inclusive, and 38 to 42, inclusive, were also rejected on the ground of indefiniteness, and on the further ground that they were broader than appellant's disclosure. Relative to the latter ground of rejection, the examiner said:

"Applicant has merely disclosed minerals of the group consisting of calcium carbonate, calcium phosphate, calcium fluoride, calcium borate and magnesium carbonate as suitable substances. The broad terminology in the claims would include numerous substances not contemplated by applicant and which are beyond the scope of the alleged invention. For example, barite, glauberite, hessite, langite, talc, valentinite, wulfenite and zaratite. The decision in Metals Recovery Co. v. Anaconda Copper Mining Co., 9 Cir., 31 F.2d 100 is deemed applicable in the instant case."

Claims 10, 16, 18, 24, 27, 28, 29, 38, and 42 were rejected by the examiner on the additional ground of new matter "in the range of hardness specified. The original disclosure shows the mineral to be softer than 4.5 and does not set forth any lower limit. The range of hardness now specified is deemed a departure from the original disclosure." Claims 43 and 44 were rejected on the ground that they were vague and indefinite.

The Board of Appeals confined its decision to the issue of the patentability of the appealed claims in view of the prior art, and did not discuss the other grounds of rejection applied by the Primary Examiner.

In its decision, the board stated that, although the references did not disclose the particular "size ranges of abrasive material" disclosed by appellant, it was of opinion that the selection of such size ranges was a mere matter of judgment and did not involve invention; that the "references" which disclose "powdered material must necessarily use this material in varying sizes, though the upper limit of the sizes used may possibly be lower than in appellant's case. However, we think it obvious, where a more active abrasive action is desired, to incorporate more of the larger-sized particles"; that the materials employed by appellant were all old in the art and had been used in somewhat similar compositions, and that, therefore, the appealed claims "involve a mere aggregation of known ingredients without any new or unexpected result."

■ The Board of Appeals did not reverse the Primary Examiner's decision as to any of the grounds of rejection applied by him. Accordingly, the decision of the board is in legal effect an affirmance of the Primary Examiner on all of the grounds of rejection, and those grounds are before us for consideration. In re Wagenhorst, 64 F.2d 780, 20 C.C.P.A., Patents, 991; In re Ball, 81 F.2d 242, 23 C.C.P.A., Patents, 830.

We will first consider the issue of undue multiplicity of claims.

It is true, as stated by the examiner, that appellant's alleged invention is simple, and that certain of the claims are somewhat confusing. We are of opinion, however, that such confusion as exists in the case results not from the number of claims presented, but rather from the indefiniteness of many of them.

As hereinbefore noted, claims 10, 11, 15 to 20, inclusive, 22, 24, 27 to 35, inclusive, and 38 to 42, inclusive, were rejected by the Primary Examiner as being too indefinite, and on the further ground that they were broader than appellant's disclosure. Claim 10, which, for the purpose

of the issue now under consideration, is sufficiently illustrative of claims 11, 15, 16, 18, 22, 24, 27, 28, 29, 32, 38, 39, and 42, covers any mineral harder than 2.5 and softer than 3.5 which is plastic when wet and substantially insoluble in water. Claims 17 and 19 cover any mineral matter substantially insoluble in water, the particles of which have different crystalline cleavage properties. Claims 20, 30, 31, 33, 34, 35, and 40 cover any mineral matter substantially insoluble in water.

■ Counsel for appellant has cited and quoted from several decisions of the Supreme Court, wherein the question of indefiniteness of patent claims was considered. However, we find nothing either in the record or in the brief of counsel for appellant from which it may be determined that claims 10, 11, 15 to 20, inclusive, 22, 24, 27 to 35, inclusive, and 38 to 42, inclusive, rejected as being broader than appellant's disclosure, do not cover many minerals, which, as stated by the Primary Examiner, are not disclosed in appellant's application. We are unable to hold, therefore, that the rejection of those claims on the ground that they were broader than appellant's disclosure is error.

■ Claim 41 was properly rejected on the ground of indefiniteness.

That claim merely provides for the mixing "of fine particles of limestone of which a substantial proportion by weight are small enough to pass a No. 325" sieve with other ingredients mentioned in the claim. It does not specify the various sizes of the limestone particles, nor does it, in fact, require that any of them shall be too large to pass through a No. 325 sieve.

Claim 43 was rejected by the Primary Examiner on the ground that it was vague and indefinite. It reads: "43. A cleaning preparation comprising a mixture of small particles of mineral, said mixture comprising sufficient particles of colloidal and near-colloidal size to render the mixture plastic when wet, said mixture comprising sufficient particles too large to pass through a No. 200 U. S. Bureau of Standards sieve and sufficient in quantity to effectively abrade dirt, and sufficient particles of intermediate sizes to embed the particles too large to pass the No. 200 sieve."

It will be observed that that claim is not limited to any particular mineral or minerals. It merely requires that the mineral particles be of colloidal and near-col-loidal size, some being too large to pass through a No. 200 sieve and sufficient in quantity to abrade dirt, and others of intermediate sizes sufficient in quantity to embed the larger particles.

Claim 44 is not limited to any particular mineral or minerals, and is substantially the same as claim 43, supra.

■ We think claims 43 and 44 are vague and indefinite and were properly rejected on that ground.

Claim 45, which was rejected by the Primary Examiner on the ground of aggregation, reads: "45. A cleaning composition comprising particles of various sizes of limestone and particles of a silicon compound of the group consisting of pumice, volcanic ash, feldspar and quartz, the finer particles of limestone constituting upwards of ten per cent by weight of the composition and the larger silicon-containing particles being loosely embedded in particles smaller than themselves."

There is nothing in the claim to indicate the size of particles of any of the ingredients mentioned therein. They may be of various sizes, but the finer particles of limestone should constitute approximately "ten per cent. by weight of the composition," the silicon-containing particles should be "loosely embedded in particles smaller than themselves," and all of the other particles of which the preparation is composed may be nearly as fine as the finer particles of limestone. There is nothing in appellant's application to suggest that such a combination of mineral particles would produce any unexpected result, or that each ingredient would do more than perform its well-known function in the composition.

■ We think that claim 45 was properly rejected on the ground of aggregation.

■ The only claims remaining for our consideration are Nos. 6, 7, 46, and 47, and the sole remaining issue with regard to those claims is whether they are unpatentable in view of the prior art.

Claims 6 and 7 are limited to limestone particles of definite proportions and sizes.

Claims 46 and 47 call for limestone particles of definite proportions and sizes in combination with other named ingredients, detergent in character.

It is true, as held by the tribunals of the Patent Office, that the prior art refer-

ences disclose the use of various minerals, including limestone, in cleaning preparations. However, we find nothing in any of the references either disclosing or suggesting the compositions defined in appealed claims 6, 7, 46, and 47.

The patentee Huyzer states that the magnesite used in his cleaning preparation must be ground to a *uniform degree of fineness.*

The patentee Gangloff discloses the use of colloidal silica mixed with powdered pumice, and teaches that the mixture must be "worked out to a consistent uniformity."

The patentee Gray states that the minerals used as abrasive ingredients in his detergent preparation should be ground to a "degree of fineness which will permit passage through a 200 mesh screen."

It is possible, of course, that in grinding the minerals disclosed in the patent to Gray to a degree of fineness that will permit them to pass through a 200 mesh screen the particles will vary some in size. The patentee, however, emphasizes the importance of using only fine particles of the minerals disclosed by him. He does not suggest that those particles should vary in size. Nor do we find any suggestion in any of the prior art references that the particles of minerals used as abrasives in cleaning preparations should vary in size. On the contrary, so far as there is any reference in the prior art to the size of mineral particles, uniformity is emphasized as being important if not essential.

Appellant's preparations are novel. They "operate efficiently in removing dirt and grease without appreciable abrasion" of the articles on which they are used, and are, therefore, useful.

Appellant's invention lies not in the discovery of new minerals for use in cleaning preparations, nor in the discovery of new properties in the minerals disclosed by him, but rather in the discovery that a free-flowing preparation, composed of various sizes and proportions of mineral particles, such as limestone, would, alone or in combination with detergent ingredients, produce new and unexpected results.

The Solicitor for the Patent Office has called our attention to our decision in the case of In re Charles Ness, 46 F.2d 375, 377, 18 C.C.P.A., Patents, 918, wherein we said: "It is true that the particular sizes—40 to 90 mesh granules—claimed by appellant are not specifically disclosed in the prior art, but the very fact that so wide a variance in size is allowed himself by claimant strongly indicates that size is not of the essence of the matter but is a factor likewise merely within the power of determination by those skilled in the art."

Although it was held in that case that the particular sizes of granules there involved were "not of the essence of the matter," we are of opinion that, in the case at bar, the sizes and proportions of the limestone particles are not a mere matter of judgment, but are "of the essence of the matter," and that appellant's preparations involve invention.

For the reasons stated, the decision of the Board of Appeals is modified, being reversed as to claims 6, 7, 46, and 47, and in all other respects affirmed.

Modified.

BLAND, Associate Judge (dissenting in part).

I must respectfully dissent from the majority's holding in reversing the decision of the Board of Appeals as to claims 6, 7, 46 and 47. I think the board's rejection on the ground that the selection of the particle sizes was a matter of judgment and not one of invention was correct. I think the allowed claims define nothing inventive. It is a matter of common knowledge that the size of abrasive particles to be used usually depends on the character of thing to be abraded.

The decision of the majority holds the rejection on the ground of multiplicity to be erroneous without, in my judgment, assigning sufficient reasons for such a conclusion. The opinion states that the invention is simple and the holdings of the tribunals below emphasize the fact that the subject matter of the application relates to a simple matter, and yet appellant submitted a vast array of claims in an attempt to define his alleged invention. There are 31 claims here on appeal. A complete record of the action of the Patent Office with reference to the character of any other claims which might have been submitted, rejected and abandoned is not shown. The record does show various amendments made to the claims here on appeal, the last of which is numbered 47. It seems to me that it is fair to say that during the prosecution of the case there were at least 47 claims submitted and vari-

**416**

ous amendments made. If the examiner was to give any consideration to such a verbose application, it would be necessary to search through the maze of "confusing" language of the claims to find· some expression of a lurking invention and to assign in each instance appropriate grounds for his rejection. The majority holds as follows: "It is true, as stated by the examiner, that appellant's alleged invention is simple, and that certain of the claims are somewhat confusing. We are of opinion, however, that such confusion as exists in the case results not from the number of claims presented, but rather from the indefiniteness of many of them."

It seems obvious that no one can write approximately 47 claims in an attempt to define an alleged invention, which concededly relates to a "simple" matter, without resulting confusion. If there is any merit anywhere in a rejection on the ground of multiplicity, which is another way of saying that the applicant has not complied with the statute in clearly stating his invention, it would seem to apply in the instant case, and if we do not apply it here, I do not know where it will be applied. An examination of the claims discloses that many of them are mere repetitions of others with no material difference except in language. Some of them, it seems to me, go far beyond any disclosure made.

JACKSON, Associate Judge, concurs in the foregoing dissenting opinion.