## In re SCHOENKY.
### Patent Appeal No. 3250.

Court of Customs and Patent Appeals.
April 16, 1934.

A. D. Salinger, of Boston, Mass. (Horace A. Dodge, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

The application, certain claims of which are here involved in an appeal from a decision of the Board of Appeals of the United States Patent Office, relates to alleged improvements in shoe-conveying systems.

In the form acted upon by the examiner, the application seems to have included fifty-four claims, twenty-one of which stand allowed. As taken, the appeal to us covered thirty-three claims, but at the hearing before us appellant withdrew the appeal as to eighteen of these, so that we are here concerned with only claims Nos. 7, 8, 23, 24, 26, 29, 32, 33, 41, 46, 47, 48, 50, 53, and 55—a total of fifteen.

It is said by appellant that no one claim is typical of all, and it is noted that no claim is quoted in the decision of the Board of Appeals. The brief of the Solicitor for the Patent Office sets out Nos. 7 and 26 as "illustrative of the subject matter involved." These will be quoted by us along with Nos. 29 and 50.

"7. The combination with a movable conveyor for shoes, of a flexible shoe-positioning member arranged for contact with the shoes upon the conveyor, a mounting for the member arranged to permit it to yield as a whole, and means for moving the conveyor and advancing the shoes as arranged upon it by the positioning member."

"26. In a shoe-conveying system, a shoe-conveyor, a second conveyor to which the first delivers, and members situated above the first conveyor and between the first and second conveyors and contacting with the shoes during their passage from the upper to the lower conveyor to position them for delivery upon said lower conveyor."

"29. In a shoe-conveying system, a shoe-conveyor, a movable positioning member situated below the delivery end of the conveyor and arranged for contact with the shoes during their fall therefrom and after the completion of said fall, and means for returning the displaced member to its normal position."

"50. In a shoe-conveying system, a shoe-conveyor, driving means for the conveyor,

means including a movable controlling device for connecting and disconnecting the driving means from the conveyor, a plurality of members movable by the shoes in their delivery from the conveyor, and connections between the members and the controlling device."

References were cited as follows:

Carlton, 638,832, December 12, 1899.

Grossmann, 710,574, October 7, 1902.

Mason et al., 1,155,942, October 5, 1915.

Heath, 1,373,812, April 5, 1921.

Kane, 1,440,391, January 2, 1923.

Harkin, 1,560,053, November 3, 1925.

Van Houten, 1,578,617, March 30, 1926.

Hungerford, 1,582,820, April 27, 1926.

Of the twenty-one claims which stand allowed, fourteen received the approval of the examiner. As to the other seven, the examiner was reversed by the Board of Appeals. The two opinions of the board (there being one on petition to rehear) are general in their nature and no claim is therein discussed specifically. The decision of the examiner, which, except as to the seven claims alluded to, was affirmed by the board, goes into detail, considers many of the claims individually, and gives the reason or reasons for the rejection of each of those disallowed.

The large number of claims in the case is explained by the following statement of appellant's brief: "The Schoenky shoe-conveying apparatus is a rather complex one which was new as a whole, and which involved numerous new and useful elements and sub-combinations, so that a considerable number of claims was necessary for adequate protection of the various aspects of the invention."

To describe the device in detail without the aid of drawings would be extremely difficult, and, since such description does not seem to be necessary here, it will not be attempted. It may be stated generally that it is a conveyor apparatus designed, apparently, to be principally used for conveying shoes in shoe-making plants during the operation of shoe manufacture. After the requisite parts of the shoe material have been placed on lasts, the lasted shoes are positioned successively, bottoms down, upon a horizontally moving belt. By means of this belt the shoes are conveyed through a conditioning chamber which is said to temper them, "rendering them soft, and particularly liable to injury" should they fall upon or rest upon their sides. At the end of the upper belt the shoes are dropped to another belt running below the first and preferably, it seems, in an opposite direction.

It is desirable, in order to prevent injury, that the shoes be kept in the same upright position as they pass from the upper to the lower belt, and the brief for appellant states that "the most important part of his invention is concerned with positioning means" for so keeping the shoes in such upright position.

Three such positioning means are disclosed.

One is a member, formed, in sections, of flexible material, being "yieldably supported and adjustable with respect to the conveyor." By means of such member, co-operating with the last-cones, the shoes are held against tilting as they pass over the end of the first conveyor.

The second positioning means comprises a plate, described as a deflecting member, which is pivoted in such position with reference to the conveyors as that any excessive movement to the right, caused by clogging shoes, will operate upon a drive-controlling switch to cause control of a circuit which stops the drive of the conveyors.

A third positioning means comprises another plate so pivoted as to function for stopping the conveyor drive in the event of the plate being forced too far to the left by clogging. This latter means is referred to in appellant's specification as being "movable in such a location as a throat through which the conveyor delivers," and it is said that: "It is displaced by the falling work and returned to its normal position, at which time it exercises its positioning effect."

It is noted that claims 7, 8, 23, 24, 29, 47, 48, and 50 were rejected by the examiner upon references; that claims 8, 47, and 48 were also rejected upon the ground of lack of disclosure; and that claims 26, 32, 33, 41, 46, 53, and 55 were rejected as not meeting the requirement of section 4888, Rev. Stat. (35 USCA § 33), as to defining the claimed invention.

As has been stated, the opinions of the Board of Appeals are quite general in their nature. In the first no one of the claims on appeal was specifically referred to, and in the second only four were mentioned and these in general terms. As we construe the opinions of the board, one of their reasons for agreeing with the conclusion of the examiner, with respect to those claims rejected as not defining invention, is that the application, as a whole, was construed to be

limited to conveying means for shoe *uppers* only. Whether such was the construction given it by the examiner is not altogether clear to us, but, however this may be, the examiner does point out in detail other and specific reasons why the claims so fail, and the decision of the board is a general affirmance of the decision of the examiner without overruling any of the objections made by the latter.

In the absence of any such ruling by the board, this court assumes the reasons of the examiner to have been approved by it, and further assumes that its own discussion was merely additional to, or else in elaboration of, the discussion by the examiner. In re Dreyfus, 65 F.(2d) 472, 20 C. C. P. A. 1204, 1207, citing In re Wagenhorst, 64 F.(2d) 780, 20 C. C. P. A. 991.

Consequently, we have studied this class of claims, not alone in the light of their discussion by the Board of Appeals, but in the light of their analysis by the examiner, with the result that we are not convinced that it was error to reject them for the reasons which the latter gives.

To repeat the reasons given by the respective tribunals of the Patent Office, or to paraphrase them, would require much space and, so far as we can see, would serve no useful purpose. Therefore, in the interest of brevity, we refrain from so doing. Were the sole ground that of the application being limited to conveyers for shoe uppers, we might feel constrained to disagree with the conclusion reached; but the other reasons detailed by the examiner have not, we think, been shown by appellant to be unsound.

The principal contention of appellant with respect to those claims rejected upon references is that the references are not relevant, in that the respective arts in which they are employed are nonanalogous to the art in which appellant's conveyer is employed.

It is true that no one of the references cited relates to a device for conveying shoes, but each does relate to a conveyer for some character of article.

Thus the patent to Carlton relates to a fruit-conveyer; that to Grossman is said to be specially applicable for conveying cane at sugar mills; that to Mason et al. is for a coal-conveyer or coal-chute; that to Heath relates to a sardine turning apparatus; that to Kane to a self-feeder for thrashing machine; that to Harkin to a device for conveying eggs; that to Van Houten is for a dough-proofing cabinet, having as one of its features a conveyer with essential appurtenances; and that to Hungerford relates to a biscuit sorting machine.

In these respective references, all relating to the conveyer art, the examiner found features which, he held, anticipated the features of such claims of appellant as were rejected upon references, and it is insisted by the Solicitor for the Patent Office that all patentable distinctions between appellant's device and the prior art are covered by the allowed claims.

We do not think that regard can properly be given to the claims solely upon the basis of their being designed for carrying shoes. They must define structure patentable over the prior art; they are not rendered patentable simply by naming the article which is to be conveyed. We have examined the claims and the references cited, in connection with the analysis of both by the examiner and by appellant, with the result that we think claims 7, 8, 23, 24, 47, and 48 were properly rejected upon the references respectively cited.

It is deemed unnecessary to dwell upon this phase of the controversy. The claims are of such breadth as not to distinguish structurally from the means described in the prior art. When such introductory or explanatory words as "shoe-conveyor" and "shoe-positioning" are disregarded, and the device is considered simply as a conveyor belt, the claims do not define or describe appurtenances of structure in terms which prevent the disclosure of the prior art sustaining them. An introductory phrase should not be considered as a limitation of the subject-matter of the issue. In re Dawe, 53 F.(2d) 543, 19 C. C. P. A. 728, 730, citing Braren v. Horner, 47 F.(2d) 358, 18 C. C. P. A. 971, 981, with its contained citations.

As to claims 29 and 50, we think the situation different. These seem to us to contain structural limitations which are patentably different, as combinations, from the art cited against them. Claim 29 is quite similar to claims 30 and 31 allowed by the Board of Appeals, except that the two latter are limited to upper shoe-conveyors while the former mentions shoes broadly. Claim 50 requires a single controlling device for one conveyor, the single device operated by one of two or more members. This seems to us to be different from the art (Kane) cited against it.

Claims 8, 47, and 48 were also rejected

for lack of sufficient disclosure. Since we have concluded their rejection upon the prior art was proper, it is not necessary to discuss this additional ground.

The appeal is dismissed as to the eighteen claims withdrawn at the hearing before us. The decision of the Board of Appeals is reversed as to claims Nos. 29 and 50, and affirmed as to all others here involved.