## In re LAURSEN.

Patent Appeal No. 3340.

Court of Customs and Patent Appeals.
Dec. 10, 1934.

As Modified Feb. 1, 1935.

See, also, 73 F.(2d) 648.

Morrison, Kennedy & Campbell, of New York City (Luther E. Morrison, of New York City, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner, rejecting, for lack of patentability in view of the prior art, claims 4 to 12, inclusive, 26, and 51 to 54, inclusive, of appellant's application. Certain other claims were allowed. Upon the oral argument before us, appellant's counsel moved to dismiss the appeal as to claim 6, and it will be so ordered.

Claims 4, 26, and 51 are illustrative of the claims before us and read as follows:

"4. The process of making a tire casing composed of a rubber body portion, beads, and reinforcing cords embedded in the body portion and anchored to the beads, which consists in building the tire casing in green or unvulcanized condition and placing it in a suitable vulcanizing mold, sealing the interior of the casing at the beads, admitting into the sealed casing for direct contact therewith water preheated to a vulcanizing temperature and under pressure in excess of the temperature pressure, and applying heat to the molds to effect vulcanization."

"26. In an apparatus for vulcanizing rubber tire casings, the combination of a mold formed with a suitable cavity to receive the green or unvulcanized tire casing, a sealing ring adapted to be inserted in the space between the beads to close the interior of the casing and provided with a single fluid conducting pipe leading into the sealed casing from outside the mold, a pipe system including a hot water supply line, a steam supply line, an air pressure line, and a drain pipe line all connected to said fluid conducting pipe, and a controlling valve associated with each line."

"51. The process of making a tire casing composed of a rubber body portion, beads, and reinforcing cords embedded in the body portion and anchored to the beads, which consists in building the tire casing in green or unvulcanized condition, and vulcanizing it in a suitable mold having seats of substantially the same diameter as the inside diameter of the bead portions of the tire, whereby said portions may be fitted snugly to the mold seats without any substantial compression on the undersides of the beads."

The references cited are: Dees, 1,109,-048, September 1, 1914; McLeod, 1,213,224, January 23, 1917; Binns, 1,400,258, December 13, 1921; Blaker, 1,500,700, July 8, 1924; Jones, 1,642,614, September 13, 1927.

The application relates to pneumatic tire casings, and discloses a process and apparatus for vulcanizing them. The principal feature of appellant's process is described in the brief of his counsel as follows:

"A characteristic feature of applicant's invention resides in the step of carrying out the vulcanizing operation by the use of hot water under pressure directly in contact with the interior of the tire casing. In other words, applicant admits into the green or unvulcanized tire casing for direct contact therewith (no air bag being used as a container) water preheated to the necessary vulcanizing temperature and under pressure substantially in excess of the vulcanizing temperature pressure. * * *"

Division of the application was required with respect to a certain part of appellant's application which is involved in 73 F.(2d) 648, 22 C. C. P. A. (Patents) ——, decided concurrently herewith.

The patent to Dees relates to apparatus for forming and vulcanizing rubber articles, and discloses a vulcanizing pot in combination with the molds. The tire cavities are connected with a main by means of stems of nozzles. The main has connected thereto a valve-controlled water line, steam line, and drain line. It also discloses that the patentee first admits water at low temperature, under high pressure, into the raw or unvulcanized casing, for use only as an expanding medium, then draining the water from the tire casing and admitting steam at vulcanizing temperature for use as a vulcanizing medium.

The Binns and McLeod patents show the use of water introduced in direct contact with the casing solely as a distending medium. The water is not preheated.

The patent to Jones relates to a method of curing rubber articles, more particularly tires, in which a bag filled with hot water is utilized to cure the inner plies of the tire. The water is heated to a temperature of 290° F., or above, and maintained at a pressure of between 200 and 300 pounds.

The patent to Blaker relates to a method of vulcanizing articles, including tire casings. The patent states:

"This invention relates to the art of vulcanizing articles, and especially hollow articles, composed in whole or in part of vulcanizable material, such as rubber and fabric tire casings, where fluid is conducted into the interior of the article or a distensible member adapted to bear against it, either to heat the article or to expand it, usually against a mold. In some of its features my invention is applicable to such vulcanizing operations whether the heating or distending fluid be applied directly to the surface of the article or to an expansible member adjacent the article, but it is especially advantageous in the vulcanizing of pneumatic tire casings where the casing, prior to or during vulcanization, is expanded, against a mold by a distensible core or bag, and I will describe my invention herein with particular reference to this operation, without, however, wholly limiting my claims thereto. * * *

"When a fluid such as steam or water is applied to the distensible member or the article to be vulcanized as in prior practice, especially if the article or the distensible member is not vented for the escape of air, a considerable time is required for heating the article to vulcanizing temperature, the article is not heated uniformly throughout, and the inner walls of the article or the core within it may be damaged during the vulcanizing heat. Such damage is particularly noticeable in the case of rubber cores which are used in successive vulcanizing operations, their inner surfaces becoming hardened and cracked. * * *

"In order to obtain sufficient internal fluid pressure to expand the tire without such excessive temperature as would prevail in saturated steam at the desired pressure, water at the desired temperature and under such pressure as will expand the tire and prevent the conversion of the water into steam has been used as a heating and distending medium. A disadvantage inheres in such use of water as it has heretofore been practiced, however, in that the water cools in giving up its heat to the core and tire, and as circulation of the water to maintain its temperature is a matter of difficulty and is not completely effective to keep the temperature within the tire sufficiently high and uniform, the heating and expanding of the tire by means of such high-pressure water has not been entirely satisfactory. * * *

"Where high-pressure water is used as the heating and expanding medium, the air of course collects in a body at the upper side of the cavity, so that its effects are definitely concentrated in that region. * * *"

Throughout the patent the particular steps described by the patentee in carrying out his method relate to the use of a distensible core or bag and not to the vulcanizing of the tire casing by means of hot water and external heat without the use of the core or bag. While the specification states that in some of its features the invention is applicable to vulcanizing operations whether the heating or distending fluid be applied directly to the surface of the article or to an expansible member adjacent the article, nowhere in the patent is it stated which features of the invention are applicable to both methods.

We have described the Blaker patent somewhat at length for the reason that the Board of Appeals in its decision primarily relied upon it as a complete anticipation of appellant's process embodied in the process claims.

The Examiner rejected all of the claims upon combinations of references. He stated, with respect to claims 4, 5, 7, 10, 12, and 52, as follows:

"The applicant contends that the art fails to show water under pressure and at vulcanizing temperature in *direct contact* with the interior of the tire. This is true. * * * *"

The Examiner held that, inasmuch as the reference Jones showed preheating of water introduced into a core or bag, but not in direct contact with the tire, and McLeod and Binns showed the introduction of water not preheated in direct contact with the tire casing, there would be no invention in introducing preheated water of vulcanizing temperature directly into contact with the tire casing.

Claim 8 was rejected by the Examiner for the same reasons given with respect to the group of claims last above named, in view of the Blaker patent. Said Blaker patent was referred to only for the purpose of showing that it was old to remove entrapped air by the use of steam.

Claims 9, 11, 53, and 54 were rejected by the Examiner for the reasons given for rejecting claim 4, in view of the Dees patent. He stated:

"* * * These claims differ over rejected claim 4, in reciting the step of utilizing a gas, steam, or air, to force the water out from within the sealed tire. This step is regarded as an independent feature. 'Obviously, the water may be removed from the sealed casing by the use of a gas, as taught by the Dees patent."

The Examiner rejected claim 26 upon the patent to Dees, stating:

"* * * The patent [claim] reads word for word on the Dees patent, except for the inclusion of an air pressure line, which is lacking in the patent. The Dees patent discloses the pipe system as including a water line, steam line, and drain line. No invention is involved in adding an air line, if it is desired to use air for any purpose. The addition of another line would involve merely plumbing skill and is void of patentability."

We have given the Examiner's specific grounds of rejection of the above-mentioned claims for the reason that, as hereinbefore stated, the Board of Appeals primarily relied upon the Blaker patent for anticipation

of all of the above-named claims except claim 26, an apparatus claim, and did not discuss the Examiner's grounds of rejection of such claims. However, the Board affirmed the decision of the Examiner that the claims were unpatentable, and hence, if we find that the Board was in error in holding that the Blaker patent anticipated all of the process claims above mentioned in reciting the rejection by the Examiner, nevertheless, under the rule laid down in the case of In re Wagenhorst, 64 F.(2d) 780, 20 C. C. P. A. (Patents) 991, we must review the grounds of rejection of said claims found by the Examiner.

The decision of the Board of Appeals, so far as material at this point, reads as follows:

"Among the references listed by the examiner is the patent to Blaker although this patent is very lightly touched upon by the examiner and by appellant. In fact the examiner in his answer, near the middle of p. 5, states that the art fails to show water under pressure at vulcanizing temperature in direct contact with the interior of the tire. In the second paragraph of this patent, there is an unquestionable disclosure of the use of hot water for vulcanizing tire casings directly in contact with the casing or in a bag as shown in Jones. Furthermore at line 77 of p. 1 of this patent there is a disclosure of the circulation of the hot water. This patent also discloses the use of steam for eliminating air from the casing before the vulcanizing fluid is applied. In the paragraph commencing at line 92 of p. 2, it states in effect that vulcanizing heat may be applied to the tire through the mold as well as by the internal use of the hot water. It is therefore our view that this patent alone anticipates substantially everything of importance covered by the appealed claims of this application relating to the use of hot water for vulcanizing the tire.

"We do not consider that the particular pressure set forth in claims 4 and 5 involve any unobvious step in carrying out the disclosure of Blaker. We find nothing patentable in the manner of draining off the water, as set forth in certain of the appealed claims, or in any of the other details. The apparatus claims we consider merely define an obvious type of equipment for carrying out the process disclosed in Blaker and, in view of the other art cited, well within the skill of an expert in the art."

Appellant requested reconsideration and rehearing of this decision, which request was denied in an opinion adhering to the views expressed in said decision.

For the purposes of our decision we will consider all of the claims as a single group, except claims 26 and 51, which we will consider separately.

With respect to said group we are unable to concur with the Board in its holding that said claims are anticipated by the Blaker patent. The question is, Would the disclosure of Blaker enable one skilled in the art to produce appellant's process without the exercise of the inventive faculty? If it would not, said patent cannot be held to anticipate appellant's invention.

It is to be observed that Blaker recites that his invention relates to the art of vulcanizing articles "where fluid is conducted into the interior of the article or a distensible member adapted to bear against it, either to heat the article or to expand it, usually against a mold." This statement is relied upon by the Board primarily as showing that Blaker's invention related to the use of hot water in direct contact with the casing as a vulcanizing agent. We do not find the slightest indication that the patentee had in mind that water heated to a vulcanizing temperature had any virtue over any other fluid, such as steam, in the vulcanizing process. The patent to Dees shows it to be old to admit steam into direct contact with the tire casing. By the use of the word "fluid," it is fair to assume that, so far as his invention was concerned, Blaker had no idea of contributing to the art any new use of *water* as a vulcanizing medium introduced directly in contact with the tire casing; and, so far as the references of record are concerned, this had never been done before. However, Blaker goes on to state as follows:

" * * * In *some of its features* my invention is applicable to such vulcanizing operations whether the heating or distending fluid be applied *directly to the surface of the article* or to an expansible member adjacent the article. * * *" (Italics ours.)

He then goes on to state that his invention is especially advantageous where a distensible core or bag is used, and throughout his specification he describes the process applicable to the use of such core or bag. Nowhere in his application does Blaker state which of the features described by him are applicable where fluid is introduced directly into contact with the casing. The language last above quoted clearly indicates that not all of the features described by him are applicable whether a core or bag is used or not, and we are left to conjecture as to which fea-

tures are applicable where a fluid is introduced into direct contact with the tire casing.

It should be noted that the principal feature of Blaker's invention seems to be the ridding of entrapped air from the core or bag or tire casing.

The Board also apparently relies upon a statement in Blaker's application referring to the circulation of hot water as showing that he disclosed the use of hot water as a vulcanizing medium, introduced directly into contact with the casing. It is clear, however, that Blaker was not here referring to hot water so introduced, for he states that "the water cools in giving up its heat to the *core and tire.*" (Italics ours.) He had previously in the patent used the word "core" as being synonymous with the word "bag."

It is clear to us that throughout his specification his process, as described in detail, applied to the use of a *core or bag* as a container for his heating and distending medium, and there is nothing in the application to indicate that preheating of water to a vulcanizing temperature is desirable when water is introduced *directly into contact* with the tire casing.

The Board of Appeals, in its opinion denying reconsideration said, referring to the Blaker patent:

"* * * We have again carefully read this patent and we feel certain that such a process is clearly disclosed therein. There are several other pertinent statements relating to the use of water for the same purpose that appellant employs it. Indeed claims 4 and 5 are specific to the use of hot water and although these claims do not specify that the water is in direct contact with the article, claims 8 and 9 call for the distensible bag which indicates, we believe, that claims 4 and 5 are generic to the use of hot water directly in contact with the article or in the distensible bag. However, regardless of the scope of the claims we regard the disclosure of the specification as clear."

Claim 4 of said patent, thus referred to by the Board, reads as follows:

"4. The method of vulcanizing a hollow article which comprises externally confining the article, introducing steam to the space within the article and there confining it for such time and at such pressure as to cause a substantial quantity of it to condense to water, at a temperature substantially above 212° F., by loss of heat to the confining means, venting the latter to permit condensation water therein to revert to steam and pass off with a part of said air, stopping the escape of said steam before the cooling of its residuum causes a substantial return flow of air into the article, increasing the pressure of said residuum by the introduction of hot water under pressure greater than that due to its temperature, and heating the article under pressure of said water."

Claim 5 of said patent is similar to claim 4, so far as the question now under discussion is concerned.

It will be noted that the Board states that said claims do not specify that the water is in direct contact with the article, but that this is inferred from the fact that other claims call for a distensible core or bag. However this may be, we find nothing in said claims 4 and 5 of the Blaker patent embracing the idea that the hot water there referred to is intended to be employed as a vulcanizing agent, but, on the contrary, the claims indicate that said hot water is employed primarily for the purpose of pressure. Of course the hot water would warm the tire casing, but we find nothing in said claims or in Blaker's specification indicating that hot water might be employed as a vulcanizing agent when introduced into direct contact with the tire casing.

The Board in its original decision, referring to the Blaker patent, stated as follows:

"* * * In the paragraph commencing at line 92 of p. 2, it states in effect that vulcanizing heat may be applied to the tire through the mold as well as by the internal use of the hot water. * * *"

The paragraph thus referred to reads as follows:

"Vulcanizing heat may be applied to the tire through the mold at any time during the operations above described, but I prefer, in the manner described, first to warm the casing thoroughly from the inner side, softening and expanding it, and then apply heat thereto through the mold by applying steam to the outer surface of the mold at a lower pressure than that within the tire."

As we construe this paragraph, standing alone, there is no indication that the patentee uses *vulcanizing* heat from the inner side of the tire, but that vulcanizing heat is applied only through the mold to the tire, and only after the inner side of the tire casing has been thoroughly warmed, softened, and expanded. In so far as vulcanizing heat applied from the inner side of the tire is con-

cerned, we find this referred to by the patentee only in the use of a core or bag, which is shown by the Jones patent. We think a fair construction of Blaker's disclosure is that he had no conception of the use of hot water in direct contact with the casing as a vulcanizing medium.

It is appellant's contention that he was the first to discover that a core or bag could be dispensed with and that water, preheated to a vulcanizing temperature and under pressure in excess of the temperature pressure, could be introduced into direct contact with the inner side of the tire casing in successfully carrying out the process of vulcanizing tires. We do not think that Blaker's disclosure would lead one skilled in the art to apply the process here claimed in vulcanizing tire casings, and hence we are of the opinion that the Board of Appeals erred in holding that the Blaker patent anticipated the said group of claims.

The Examiner clearly disagreed with the Board in this respect, for he stated, as hereinbefore quoted:

"The applicant contends that the art fails to show water under pressure and at vulcanizing temperature in *direct contact* with the interior of the tire. This is true. * * * *"

It is significant, too, that the Examiner cited the Blaker patent only with respect to the element recited in claim 52 as "admitting steam into the sealed casing while permitting the escape therefrom of air heated up by the steam." He apparently found nothing else in the Blaker patent bearing upon the patentability of appellant's process.

We next come to a consideration of the grounds given by the Examiner for the rejection of the group of claims under discussion.

The principal ground of rejection lay in combining the disclosure of the Jones patent with that of McLeod or that of Binns to establish lack of invention in this group of claims. As heretofore noted, Jones discloses hot water admitted into a bag and not in direct contact with the tire. McLeod and Binns disclose the admission of water in direct contact with the tire casing for the purpose of pressure only, so that the tire casing may be expanded uniformly during the period of vulcanization. There is no indication in either the McLeod or the Binns patent

that the water so introduced is heated, or that it performs any part in the actual operation of vulcanizing the tire other than to give the casing a uniform expansion.

We see no reason for believing that it would be obvious to one skilled in the art, from an examination of these patents, that the water introduced directly into contact with the inner side of the tire might be heated to a vulcanizing temperature and the bag of Jones dispensed with in the operation of vulcanizing a tire. Indeed, the teachings of both Jones and Blaker would indicate that, if hot water is employed as a vulcanizing agent in vulcanizing a tire, it should *not* be introduced directly into contact with the tire casing, but in a bag or core. It would seem that in the prior art it was thought necessary to use a core or bag when hot water was used as a vulcanizing agent.

For the reasons stated, we are of the opinion that said group of claims do not lack patentability in view of the references, and that claims 4, 5, 7, 8, 9, 10, 11, 12, 52, 53, and 54 should be allowed.

We will next consider claim 26, which is an apparatus claim. This claim was rejected by the Examiner upon the Dees patent. The Board held that this claim merely defined an obvious type of equipment for carrying out the process disclosed by Blaker and, in view of the other art cited, was well within the scope of an expert in the art. The only novelty asserted by appellant with respect to this claim is that a single conducting pipe is supplied for carrying out all the steps of appellant's process. The Dees reference shows a pipe system as including a water line, steam line, and drain line; appellant has added an air line, but we agree with the Examiner that the addition of another line to the system involves merely plumbing skill and does not lend patentability to the claim. We hold that claim 26 was properly rejected.

The last claim to be considered is claim 51, which specifies that the seats of the mold are substantially of the same diameter as the inside diameter of the bead portion of the tire.

With respect to this claim, the Board in its original decision stated:

"Claims 12 and 51 cover a detail which has not as yet been referred to. These claims in effect specify that the seats of the mold

are substantially of the same diameter as the inside diameter of the bead portion of the tire. Appellant states that prior to his contribution it was deemed necessary to construct the bead portions of smaller diameter than the mold seats in order to force the rubber and fabric material against the wire beads, but, in doing this, buckling of the tire occurred which he finds objectionable in employing his sealing ring for the use of hot water vulcanization. While it is true that we have no art before us showing an anticipation of appellant's relevant sizes, we do not feel justified in accepting his statement that the bead portions and the mold seats have never been of substantially the same diameter. It would seem to us a fairly obvious arrangement and we do not consider that appellant should be granted a monopoly in employing a tire carcass large enough with relation to the mold so that the material would not buckle."

In its opinion denying appellant's motion for reconsideration, the Board reiterated its opinion that, if buckling of the tire should occur where the bead portions of the tire are smaller than the mold seats, it would be obvious to one skilled in the art to make such bead portions of the tire large enough in relation to the mold so that the tire would not buckle. We are in agreement with the Board in this statement, and therefore in our opinion claim 51 lacks patentability and its rejection should be affirmed.

It should also be observed that the claimed novel elements of claim 51 are also found in claim 12, but in claim 12 these elements are in the form of a limitation, which limitation is disclosed in appellant's specification. Said claim 12 reads as follows:

"12. The process according to claim 4, characterized by the fact that bead portions of the unvulcanized casing have an inside diameter substantially equal to the diameter of the mold seats so as merely to fit said mold seats snugly and thus to avoid any substantial compression on the undersides of the beads."

We think claim 12 should be allowed, upon the theory that, claim 4 being patentable, appellant has the right to add to it a limitation described in his specification.

For the reasons stated, the decision of the Board of Appeals is affirmed as to claims 26 and 51, and reversed as to claims 4, 5, 7, 8, 9, 10, 11, 12, 52, 53, and 54. The appeal as to claim 6 is dismissed.

Modified.

Morrison, Kennedy & Campbell, of New York City (Luther E. Morrison, of New York City, of counsel), for appellant.

