27 C.C.P.A. (Patents)

**BOURDON v. KRAFT.**

**Patent Appeal No. 4352.**

Court of Customs and Patent Appeals.
July 8, 1940.

Hoguet, Neary & Campbell, of New York City (Worthington Campbell, of New York City, of counsel), for appellant.

Evans & McCoy, of Cleveland, Ohio, (Frank S. Greene, of Cleveland, Ohio, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences awarding to appellee priority of invention of the subject matter of counts 2 and 3 of the interference. Priority of invention of the subject matter of count 1 was awarded to appellant by the Examiner of Interferences, and appellee did not appeal from such award.

The interference arises between an application of appellant filed July 27, 1935, and an application of appellee filed July 20, 1936. The counts originated in appellant's application.

Appellee being the junior party, the burden was upon him to establish priority of invention by a preponderance of evidence.

The counts forming the issue read as follows:

"2. A vehicle tire having moulded in its surface a plurality of highly flexible ribs of greater height than width disposed angularly with respect to the median plane of the tire and comprising only a portion of the load carrying tread band, the tread ends of the ribs in contact with the ground having sharp edges, engageable with the road surface, and said ribs being flexible laterally and longitudinally under deforming stresses while capable collectively of sustaining the loads to which they are subjected without collapsing.

"3. A vehicle tire having moulded in its surface a plurality of closely spaced highly flexible ribs of greater height than width disposed angularly with respect to the median plane of the tire and comprising only a portion of the load carrying tread band, said ribs being flexible laterally and longitudinally under deforming stresses while capable collectively of sus-

taining the loads to which they are subjected without collapsing."

The counts sufficiently describe the involved invention.

Appellant, who is a citizen of France, in his preliminary statement alleged disclosure of the invention in this country on or about March 13, 1935, and actual reduction to practice on or about November 1, 1935.

Appellee in his preliminary statement alleged conception and disclosure of the invention on or about August 4, 1934; that his involved application is a continuation of an application filed by him on November 21, 1934, which allegedly disclosed the invention here in issue, and that the invention was not reduced to practice by him prior to the filing of said last-named application.

It appears that a patent, No. 2,048,635, was issued on said last-named application on July 21, 1936.

Appellee took testimony. In lieu of testimony appellant filed a stipulated statement of facts establishing that appellant disclosed the invention in this country at least as early as March, 1935, and the filing of his application on July 27, 1935, was, of course, a constructive reduction to practice of the invention.

The Examiner of Interferences held that appellee had not established any date of conception prior to the filing date of his application of November 21, 1934, and further held that said application disclosed the involved invention and constituted a constructive reduction to practice thereof. He therefore awarded priority of invention to appellee with respect to both counts.

The Board of Appeals did not expressly affirm the holding of the Examiner of Interferences that appellee had not established conception of the invention prior to the filing date of his November 21, 1934 application, but its general affirmance of the decision of the examiner included the affirmance of such holding. In re Wagenhorst, 64 F.2d 780, 20 C.C.P.A., Patents, 991.

The board expressly held that appellee's application of November 21, 1934 disclosed the involved invention and constituted a constructive reduction to practice thereof.

From the decision of the board affirming the decision of the Examiner of Interferences this appeal was taken.

The invention disclosed in appellant's application is therein described, following a recital of its objects, as follows: "The attainment of the foregoing objects and advantages is accomplished, in the specific form of the invention shown and described herein, by the provision of sections in the tread band of the tire, each section being formed of a plurality of slits extending from a central, longitudinal and relatively rigid tread member to one side of the tread band and positioned between relatively rigid parallel blocks which limit the flexing or collapsing action of the ribs of rubber between the slits. In this construction, the relatively rigid blocks serve as an abutment for the ribs and limit the angle and elongation of such ribs under compression and traction efforts, the positional relationship of each section of ribs between the rigid blocks giving various advantageous characteristics, including an increased resistance against tearing, side skidding, a cleaning action on the road surface, and a relatively greater gripping or traction effect between the tire and road surface."

It will be observed that appellant's application recites a "relatively rigid tread member," but this limitation is not contained in either of the counts, and we may not read such limitation thereinto.

Appellee's earlier application states:

"This invention relates to tires and more particularly to an improved tire and tread therefor.

"One of the objects of the present invention is to provide a tire having an improved tread which provides for a greater flexibility of the tire carcass and a greater distribution of the flexing in the carcass, which enhances the durability and life of the tire carcass.

"Another object is to provide a tire with a tread of improved construction having an increased coefficient of friction and which has a greater road gripping action and is more resistant to skidding than previously known tire treads.

"Another object is to provide a tire with a tread which is more silent in operation than previously proposed treads.

"Another object is to provide a tire with a relatively durable tread which is flexible in itself and which adjusts itself to road irregularities.

"Another object is to provide a tire with an improved tread having for the

most part a series of relatively narrow, separated portions of greater depth than width, each of which is laterally unstable and may flex into engagement with the adjacent portions when subjected to road contact, and which provide for greater road gripping action and resistance to skidding.

"With the above and other objects in view, the present invention comprises certain features of construction to be hereinafter described with reference to the accompanying drawings, and then claimed."

His drawings disclose a plurality of relatively narrow, closely spaced, flexible ribs parallel to each other and extending continuously about the tread portion of the tire in a circumferential direction. This construction is fully described in the specification. The specification, however, also states: "While I have shown each of the finlike portions 12 as continuously extending around the tire casing in a circumferential direction, it is to be understood that they may be arranged in other manners. For example, the portions 12 may be arranged to provide a herringbone effect, the portions 12 originating from a central rib or groove located at the median plane of the tire casing."

There is no drawing of this modified form of appellee's structure.

It is this modified form which the Examiner of Interferences and the Board of Appeals held discloses the involved invention and therefore entitles appellee to the filing date of said earlier application for conception and constructive reduction to practice of the invention.

It is one of appellee's contentions, as we understand it, that the element of the counts—"comprising only a portion of the load carrying tread band"—should not be construed to mean only a portion of the ground engaging part of the tire, but should include also the slits and grooves between the ribs upon the tread band. We are not in agreement with this contention. We do not think that in any proper sense the grooves between the ribs can be said to be a "portion of the load carrying tread band." So to construe the phrase would give no meaning to the term "load carrying," for under appellee's construction the count would have the same meaning if said term were omitted. The use of the term "load carrying" clearly implies that some portion of the tread band is not load carrying, but under appellee's construction

the entire tread band would be "load carrying."

We think it proper to observe that this point does not seem to have been raised before the Patent Office tribunals.

■ We now come to a consideration of the particular points upon which the Patent Office tribunals relied as warranting an award of priority of invention to appellee.

As hereinbefore stated, the Examiner of Interferences held that the evidence does not establish conception of the invention by appellee prior to the filing date of his earlier application, November 21, 1934. This holding was clearly correct, and appellee here makes no serious contention to the contrary.

Before discussing the principal question in the case, we will consider briefly appellant's contention that appellee's earlier application as originally filed does not disclose the limitation in the count which requires the flexible ribs to be capable collectively of sustaining the load to which they are subjected without collapsing.

That the application discloses flexible ribs is conceded. With respect to the condition of the ribs under a load, the application states: "* * * A static load of 1050 pounds was imposed on the tire through the wheel axle mounting and this gave the tread pattern illustrated in Fig. 8. * * *"

Figure 8 referred to in the quotation shows that the ribs were not collapsed. We are therefore unable to agree with appellant's contention upon this point.

This brings us to the principal question of whether or not appellee's disclosure in his earlier application of a modified form of his structure, hereinbefore quoted, supports the element of the counts reciting that the highly flexible ribs shall comprise "only a portion of the load carrying tread band." The sentence of the disclosure in issue upon this point reads: "For example, the ribs 12 may be arranged to provide a herringbone effect, the ribs 12 originating from a central rib or groove located at the median plane of the tire casing." The "ribs 12" referred to are flexible rib members.

Upon this point the Examiner of Interferences in his decision stated:

"Bourdon contends that the Kraft patent does not disclose this subject matter since if the herringbone ribs originate

from a central groove obviously no portion of the load is or can be carried by the groove. On the other hand, if the herringbone ribs originate from a rib there is no showing that the rib is high enough to support any of the load and in any event it will not support a substantial portion of the load.

"It seems clear that if the herringbone ribs are to originate from a central rib this central rib must be as high as the herringbone ribs themselves; otherwise in relation to these ribs the central portion would be a groove and not a rib, and would fall under the classification of a groove as alternatively set forth in this portion of the specification.

"It is true that a single central rib would not support any substantial portion of the load but the counts are not limited in this respect. All the counts recite is that the angularly disposed flexible ribs comprise only a portion of the load carrying tread and if any other portion carries any load at all this limitation is present. A portion is anything less than the whole and the herringbone ribs of the Kraft patent being slightly less than the whole constitute only a portion of the load carrying tread.

"The counts are clear and unambiguous and there is no warrant for reading limitations into these broad counts which were not present in the counts as drawn, such as a requirement that a portion other than the angularly disposed rib portion carry a substantial and significant portion of the load."

The Board of Appeals in its decision stated:

"The Examiner of Interferences points out at some length the relatively broad scope of the terms of counts 2 and 3 and holds that where the central member is 'a central rib', that it satisfies the requirements of the counts particularly the clause requiring that the angularly disposed ribs comprise only a portion of the load carrying tread band, that counts 2 and 3 thus do not require any particular relative proportioning as between the angular ribs and the rest of the tread.

"After careful consideration of the situation bearing in mind the well established rule that counts must be given the broadest construction their language will reasonably permit while giving due weight to all limitations, we are in full agreement with the examiner's conclusions. No doubt is found that the terms of counts 2 and 3,

fairly and reasonably read upon the noted sentence in the earlier Kraft application. The terms of these counts are simply broad and we find no reason why limitations giving any narrower construction should be assumed to be read into them. The said sentence clearly indicates that a central rib is provided and that the angular ribs originate from it. No relative sizes are indicated as between the rib or central zone and the zone of the angular ribs by counts 2 and 3. We hold that the simplest structure satisfying the sentence in the patent is that of making the ribs of the same height. It is not conceded that the examiner exceeded his authority in making this simple assumption and holding that the central rib would thus contact the road surface and carry some of the load. No reason is found for assuming that the relative dimensions of the ribs of this species of Kraft would be any different from the dimensions illustrated in the several other species of the patent, that is, ribs would be flexible and of greater height than width and possess the functional requirements of being flexed laterally and longitudinally while capable of collectively sustaining the loads to which they are subjected without collapsing. * * *"

There is nothing in the language of the sentence under consideration to indicate that appellee had any conception of the invention involved in the counts before us, for he apparently was indifferent to whether the central portion of the tire from which the flexible members originate is a rib or a groove. Nevertheless, if the sentence can fairly be construed as disclosing a rib of the same height as the angularly disposed ribs having a herringbone effect, then we must agree with the Patent Office tribunals that appellee's earlier application disclosed the invention embraced in the counts and was a constructive reduction to practice thereof.

We think that the assumption by the Examiner of Interferences and the Board of Appeals that, if the herringbone structure originated from a central rib, such rib must be as high as the herringbone ribs themselves, is not warranted.

If appellee made a claim in his application so providing, it seems clear to us that it would be subject to rejection for lack of disclosure, and if that is true there can be no warrant for the assumption which the Patent Office tribunals have made. We cannot agree with the examiner

that, unless the central portion of the tire is not as high as the flexible herringbone ribs, a groove would be formed and not a rib.

It being apparently a matter of indifference to appellee whether the central portion is a rib or a groove, we see no reason why such central portion could not be a rib lower than the height of the flexible ribs. It is clear to us from an inspection of the drawings of appellee's earlier application, which disclose only circumferential ribs, that any one of the ribs there shown might be made shorter than the remaining ribs and it still would be properly denominated a "rib" and could not in any proper sense be denominated a groove.

There is nothing within the four corners of the earlier application of appellee to suggest any particular height of the central rib, or in fact any function whatever that such rib should perform.

The statute requires an applicant for a patent to describe his invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art * * to make, construct * * * and use the same." 35 U.S.C.A. § 33. We think that, with respect to these counts, appellee's early application does not comply with this requirement of the statute, for we find nothing in the application to advise one skilled in the art that the central rib should be as high as the herringbone ribs, and we see no reason why such person should do so in so far as the teachings of the patent are concerned.

We find nothing in appellee's earlier application to indicate that he had any conception of the invention embraced in the counts before us.

We think the Patent Office tribunals made an unwarranted assumption that any central rib disclosed in that application would be of the same height as the herringbone ribs there disclosed.

It follows from the foregoing that in our opinion the Board of Appeals erred in affirming the decision of the Examiner of Interferences awarding priority of invention to appellee. Upon the record before us we hold that priority of invention should be awarded to appellant upon both counts.

For the reasons hereinbefore stated, the decision of the Board of Appeals is reversed.

Reversed.