31 C.C.P.A. (Patents)

## In re BOYCE.

Patent Appeal No. 4914.

Court of Customs and Patent Appeals.
June 26, 1944.

Rehearing Denied Oct. 2, 1944.

Martin J. Finnegan, of Washington, D. C. (Charles M. Funkhauser, of Washington, D. C., and Stephen Cerstvik, of Bendix, N. J., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the examiner rejecting three claims numbered 9, 10, and 11, embraced in a divisional application for patent for "Armature Assembling Machines."

Claim 9 reads as follows:

"9. In a coil positioning machine for an armature assembly including a slotted core to receive the side portions of the armature coils, rotatable means for exerting a preliminary inserting pressure upon groups of adjacent coil sides, prior to application of full inserting pressure thereto, said means including a roller (21) having a concave surface of a curvature corresponding to that of the armature core."

Claims 10 and 11 cover the same features with additional limitations. Claim 10 recites means for mounting the roller "with its axis transverse to the axis of the armature core" and claim 11 recites means "for rolling said rotatable means longitudinally of the core."

The examiner cited as references the following six patents:

Holden, 1,168,885, January 18, 1916.
Cullin, 1,443,526, January 30, 1923.
Lynch, 1,496,239, June 3, 1924.
Schade, 1,544,601, July 7, 1925.
Barr, 1,665,522, April 10, 1928.
McCaffrey, 2,111,457, March 15, 1938.

In its decision the board, while listing all the references so cited by the examiner referred only to the Holden patent, but it did not reverse the examiner's findings as to any of the others. Appellant, apparently, regarded the board's decision as be-

ing based solely on Holden and did not in his reasons of appeal to us assign error as to the application of any other of the references.

The situation thus presented leads us to make certain observations at this place in our decision.

In the case of In re Wagenhorst, 64 F.2d 780, 20 C.C.P.A., Patents, 991, decided April 24, 1933, we announced a rule which is epitomized in our second headnote of the case as follows:

"The Board of Appeals having affirmed the decision of the examiner in rejecting the claims of appellant on certain grounds and upon certain named references, *held* that such affirmance has the legal effect of a rejection upon the grounds and references cited by examiner, and not expressly reversed by the board." (Italics quoted.)

The rule thus announced was not deemed to be revolutionary in character but was thought to be based upon sound reason in the light of the statute defining the court's jurisdiction in patent appeals. Its reasonableness has never been challenged before us by the patent bar, but, repeatedly, we have been confronted with appeals in cases where the board made no mention of some of the references cited by examiners and appellants failed (as appellant here failed) to challenge their application in the reasons of appeal so as to require or admit of their consideration by us. Such situations have frequently caused embarrassment to counsel, and, in some measure, to the court, since it is our desire to give full consideration to every element involved in cases brought before us. This we do when the reasons of appeal conform to the statute and the rules.

It is our hope that all the attorneys engaged in the practice of patent law may become familiar with the rule announced in the Wagenhorst case, supra, and appreciate the necessity of observing it, and, with the thought in mind that it may aid in emphasizing its importance, we have collated an extensive list of cases in which it has been applied since its original announcement more than eleven years ago, from which time it has been consistently followed by us. They are as follows: In re Dreyfus, 65 F.2d 472, 20 C.C.P.A., Patents, 1204, 1207; In re Emanueli, 67 F.2d 445, 21 C.C.P.A., Patents, 701, 704; In re Lilienfeld, 67 F.2d 920, 21 C.C.P.A., Patents, 792, 793; In re Ross, 68 F.2d 164, 21 C.C.P.A., Patents, 798, 802; In re Sponable, 69 F.2d 544, 21 C.C.P.A., Patents, 958, 961; In re Schoenky, 69 F. 2d 982, 21 C.C.P.A., Patents, 1052, 1055; In re Heintz, 71 F.2d 172, 21 C.C.P.A., Patents, 1169, 1172; In re Bowles, 71 F. 2d 202, 21 C.C.P.A., Patents, 1212, 1214; In re Laursen, 73 F.2d 642, 22 C.C.P.A., Patents, 774, 778; In re Ball, 81 F.2d 242, 23 C.C.P.A., Patents, 830, 833; In re Curtis, 81 F.2d 236, 23 C.C.P.A., Patents, 869, 874; In re Thomas and Hochwalt, 83 F. 2d 902, 23 C.C.P.A., Patents, 1238, 1240; In re Wheeler, 83 F.2d 904, 23 C.C.P.A., Patents, 1241, 1243; In re Ellis, 86 F.2d 412, 24 C.C.P.A., Patents, 759, 761; In re Deems, 93 F.2d 47, 25 C.C.P.A., Patents, 785, 788; In re Ringel, 94 F.2d 225, 25 C.C.P.A., Patents, 879, 886; In re Adrian, 94 F.2d 808, 25 C.C.P.A., Patents, 921, 924; In re Schmidt, 100 F.2d 673, 26 C.C.P.A., Patents, 773, 775; In re Widmer, 102 F.2d 409, 26 C.C.P.A., Patents, 963, 970; Bourdon v. Kraft, 113 F.2d 115, 27 C.C.P.A., Patents, 1408, 1409; Crane et al. v. Carlson, 125 F.2d 709, 29 C.C.P.A., Patents, 879, 881; In re Lincoln et al., 126 F.2d 477, 29 C.C.P.A., Patents, 942, 948; Foss v. Oglesby, 127 F.2d 312, 29 C.C.P.A., Patents, 1005, 1008; In re Wahl, 132 F.2d 323, 30 C.C.P.A., Patents, 719, 721; In re Rice, 132 F.2d 140, 30 C.C.P.A., Patents, 730, 731; Jones v. Winsor, 133 F.2d 931, 30 C.C.P.A., Patents, 824, 829; In re Nelson, 134 F.2d 187, 30 C.C.P.A., Patents, 864, 869.

The applicability of the rule in the instant case is hereinafter stated.

Appellants claimed invention relates to armature winding "particularly" (as stated in appellant's brief before us) "to * * * means for inserting the copper current conductors in the peripheral slots or grooves that are common to all armatures or rotors of dynamo-electric machines."

In his brief appellant describes his apparatus and the functions performed by its different parts in great detail.

The examiner also gave a very complete description in his statement following the appeal to the board from which statement we quote the following pertinent excerpts (in some instances omitting the numerals):

"* * * claims 9, 10 and 11 cover either a concave roller, a concave roller and its mount, or a rotatable means and means for rolling it.

898

"The remainder of the claim is descriptive only of function and use. The preamble states that the roller is in a coil positioning machine for an armature having slotted cores for coil sides, a matter previously considered supra. The roller is stated to exert pressure on the coil sides prior to application of full pressure, a mere statement of the degree to which the roller is used rather than setting forth any further structure of the roller, the machine nor the roller operating mechanism. It is noted * * * that the roller pushes the coils flush with the armature surface and is inoperative for any further pressure. Whether teeth * * * are later used is immaterial to the function, operation or construction of the only element under consideration in these claims, namely the roller 21. The claim further states that the concavity is of a curvature corresponding to that of the armature core an essentially obvious condition if the roller is going to engage the armature other than with a line contact, In re Goessling, 515 O.G. 559; Ex parte Stone, U S Dailey No. 4 page 468; Peters v. Active Mfg. Co., 470 O.G. 1219. Ex parte Stone holds that no invention is involved in shaping a mold to the form of the article to be produced, whereas, In re Goessling states that no invention is involved in shaping a roll pass to the shape of the cross-section desired, nor to put a high part to produce a recess for to obtain a patent it must not only be novel and useful but must be the result of inventive genius. The claims further reflect the idea of rotating the roll longitudinally of the axes on an axis transverse of the axis of the armature.

"Thus the sole question for consideration is the use of a concave roll for pressing coil sides of an armature, said roll rotating on an axis transverse of the armature axis. Broadly, and the claims are broad, applicant is using a roller to roll elements into a groove. Particular attention is called to Barr who states as the object of his invention * * * that the 'efficiency and long service of an induction motor having a rotor—require the conductors to be accurately positioned in the rotor slots and firmly seated on the bottom thereof.' For this purpose, Barr provides in *a single machine* a roller * * * for pressing and forcing the conductors into the slots * * * and a roller * * * that has teeth that are successively brought into engagement with the conductors and further drive the same in the slot. Therefore Barr discloses a roller * * * that meets all the function and uses prescribed in claims 9, 10 and 11, namely, it drives the conductors by providing a preliminary inserting pressure upon the same prior to the application of full inserting pressure by [another] roller * * *. The only distinction is that the roller is cylindrical and not concave and, as a corrollary thereto, the cylindrical roll is on a longitudinal axis and the concave roll is on a transverse axis. Cullin, Lynch, Schade and McCoffrey are cumulative in their disclosure of the similar use of a cylindrical roll disclosing rolls 13, C, 13 and 59 respectively. Thus the only corporeal essence of the claims is the use of a *concave* roller on a *transverse* axis. This merely denotes a desire to roll the armature longitudinally rather than at right angles thereto and essentially reflects no more than a mere mechanical variation in the sole desire to have a different rolling direction. It is so common in the many arts to roll either way that no invention is seen in the mere selection of the one over the other in a particular art. In this respect Schade and Lynch disclose cylindrical rollers for a similar purpose movable longitudinally of the work, the rollers being cylindrical because the work is flat, if the work is round it is obvious to make the roll concave. As one instance of such a roll attention is called to Holden. Therefore, where it is old to roll conductors in slots by a cylindrical roll rolling side by side, is it invention to so roll the conductors by a roll having a longitudinal rolling effect in view of this advanced age of mechanics and the obvious construction of a concave roll for the purpose. A 'longitudinal rolling effect' is used because the claims do not differentiate between a roll rolling and moving longitudinally along the armature and a roll on a stationary axis and the armature moving through the same. Such a change in the rolling axis, with the obvious and notoriously old change in the shape of the roller occasioned thereby, is considered no more than the exercise of ordinary mechanical choice and not such a flash of genius that would warrant the grant of a patent manopoly, nor such a change that produces a new and unobvious result, nor supplies a long felt want in the industry for creating success out of failure." (Italics quoted.)

From the foregoing it will be seen that the examiner relied on the patent to Barr as the principal reference. In the reasons of appeal to the board appellant did not allege error with respect to the applicability of any one of the patents cited by the examiner, and the board, as has been stated, made no mention of any except the patent to Holden. In the reasons of appeal before us error. is assigned only with reference to the applicability of the Holden patent.

Under such circumstances we, of course, must treat all the patents cited by the examiner as valid references, they not having been expressly overruled by the board. Furthermore, since the correctness of the examiner's findings of fact concerning them has not been challenged in the reasons of appeal we must assume their correctness. See cases cited above.

Such being the situation, there is no necessity to discuss the applicability of the Holden patent as a reference. Even if we should be of opinion that it is not an applicable reference, we nevertheless could not reverse the decision of the board upon the reasons of appeal before us.

The decision of the board is affirmed.

Affirmed.