46 CCPA

**Application of Francis Lockwood O'BRIEN.**

**Patent Appeal No. 6425.**

United States Court of Customs and Patent Appeals.
April 22, 1959.

Willis B. Rice, New York City (Robert I. Dennison, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Comr. of Patents.

Before WORLEY, Acting Chief Judge, and RICH, MARTIN, and JOHNSON (retired), Judges.

WORLEY, Acting Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the Primary Examiner's rejection of certain claims of appellant's application for a patent on a musical instrument, on the ground of lack of invention over the prior art.

Appealed claims 4 and 6 read:

"4. A musical instrument comprising a keyboard having a key for each note of the scale, three series of strings, each containing a string for each note of the scale, one of said series having its strings tuned at standard intervals according to the notes which each string represents at standard pitch, another of said series having its strings tuned at identical intervals to the first series but each string being a definite fraction of a semitone lower than its corresponding string of the first mentioned series, and the third series having its strings tuned at identical intervals of the first series, but each string being a definite fraction of a semitone higher than its corresponding string of the first mentioned series, and mechanism operated by each key for striking the related string of each series simultaneously.

"6. A device according to Claim 4 in which the fractional differences in pitch are both substantially ⅓ of a semitone."

The references relied on are:

| | | |
|---|---|---|
| Muller | 512,048 | January 2, 1894. |
| Hammond | 2,159,505 | May 23, 1939. |
| Kannenberg | 2,287,105 | June 23, 1942. |
| Hanert | 2,509,923 | May 30, 1950. |

Appellant's application discloses a piano in which the hammer actuated by each key strikes three strings simultaneously. One string of each group is tuned to a note of the scale, another is tuned a fraction of a semitone, preferably about one-third, below that note, and the third string is tuned the same degree above the note. This arrangement is said to produce a richness of tone which cannot be obtained with a conventionally tuned piano.

The Muller patent shows a piano having three strings for each key, the strings being struck simultaneously by the hammer, but the strings of each group are tuned to the same pitch.

The patents to Hammond, Kannenberg, and Hanert all relate to electric organs, and each discloses an arrangement in which each key produces not only a note of the scale, but also a vibration of a slightly higher frequency and one of slightly lower frequency. Only the Hammond patent discloses exact values for such frequencies, and there the basic note is approximately, though not exactly, midway between the higher and lower frequencies, but is not spaced from them by as much as one-third of a semitone as in appellant's preferred instrument.

■ The examiner's first rejection was on the Muller patent alone. That was reversed by the board. The second rejection, affirmed by the board and involved in the instant appeal, was based on Muller in view of Hammond, Kannenberg, or Hanert on the ground that it would not require invention, in view of any of the last three patents, to tune the strings of Muller's piano in the manner set forth in the appealed claims.

In its decision the board made the following statement:

"We have studied the subsidiary art and find that Kannenberg and Hanert are cumulative only relative to Hammond. We will, therefore, confine our further attention to Hammond and Muller."

No mention of the Kannenberg and Hanert patents is made in appellant's reasons of appeal, and in view of that fact the Solicitor of the Patent Office, relying on In re Wesselman, 127 F.2d 311, 29 CCPA 988; In re Boyce, 144 F.2d 896, 32 CCPA 718; and In re Glocker, 153 F.2d 119, 33 CCPA 789, contends that the board's decision should be affirmed without consideration of its merits.

The Wesselman decision does not appear to be pertinent here since it merely holds that a reason of appeal containing nothing but a general assignment of error does not satisfy the statutory requirement that appellant must specifically set forth his reasons of appeal.

In the Boyce case the examiner based his rejection on six references, only one of which was mentioned by the board in entering a general affirmance. Appellant, in his reasons of appeal, referred only to the reference mentioned by the board. It was held that the board's action was, in effect, an affirmance of all grounds of rejection employed by the examiner, and, that since appellant had not alleged error in the rejection on those references not mentioned by the board, the decision must be affirmed, and it was not necessary to consider the merits of the case. It is to be noted, however, that one of the references not mentioned by the board was relied on by the examiner as the principal reference, and that the board did not state that any of the references were merely cumulative. Apparently the board merely affirmed one of several independent grounds of rejection without specifically considering the others.

In the Glocker case the examiner rejected the claims on "either the patent to Keefer or the patent to Brelle in view of the patent to Glocker." The board, in affirming, relied on Glocker only, stating that it was unnecessary to discuss the other patents "as they are cumulative only." It was held that if this court should disagree with the board as to the rejection on the Glocker patent, the

board's decision could not be reversed without considering the examiner's rejection based on the other two patents in view of Glocker, and since those other patents were not in the record and were not referred to in the reasons of appeal, the board's decision was affirmed without consideration on the merits.

It is to be noted that in both the Boyce and Glocker cases the ground of rejection discussed by the board was distinct from those which it did not discuss, since a different basic reference was used in each case. Clearly, therefore, a reversal of one ground would not necessarily involve a holding that the other grounds also should be reversed.

In the instant case, on the other hand, the Muller patent is the only basic reference involved and the secondary references Hammond, Hanert, and Kannenberg, all of which are included in the record, were cited to show the same feature, namely, the producing, in an electric organ, of a note made up of a plurality of frequencies sounded simultaneously. Accordingly, only a single issue is presented, whichever secondary reference is considered; and, if it should be necessary to reverse the rejection on Muller in view of Hammond, as to which appellant expressly assigns error in his reasons of appeal, it would follow that the rejections on Muller in view of Hanert and Kannenberg were also in error.

We are of the opinion that appellant's reasons of appeal are sufficient. Those reasons, while they expressly mention only the Muller and Hammond patents, definitely advance the contention that it is not proper to combine disclosures of a piano and an electric organ as a basis for rejecting appellant's claims. Obviously that contention is applicable to the Hanert and Kannenberg patents as well as to the Hammond patent. Accordingly, if appellant can successfully establish the validity of the contentions advanced in his reasons of appeal, a reversal of the board's decision would be in order.

Since the reasons of appeal fairly question the single essential proposition on which the rejections by both the board and the examiner were based, we feel that appellant should not be deprived of his day in court on the purely technical ground that he failed to mention each of the references by name. No doubt it would have been better if he had done so, but we do not consider the omission necessarily fatal.

Since the original reasons of appeal are held to be sufficient it is unnecessary to consider appellant's motion to amend by adding further reasons.

■ There is some uncertainty as to exactly what claims are before the court on this appeal. The board considered and affirmed the examiner's rejection of claims 1 to 9, inclusive, which were the only claims in the application. Thereafter, by amendment approved by the board, appellant cancelled claims 2, 5, 7, 8, and 9. In appellant's reasons of appeal to this court, no claims are specifically mentioned in the assignment of errors, but at the conclusion of such assignment it is stated that "Applicant herewith proposes that the record on Appeal shall contain the specification as filed, the final rejection of August 10, 1955, the decision of the Board of Appeals, and a copy of Claims 4, 5, 6, 7 and 9." For some reason not appearing in the record, claims 1 and 3 have been included therein in addition to claims 4 and 6. Claims 5, 7, and 9, although referred to in the notice of appeal, are not included in the record here, presumably because appellant had directed that they be cancelled. Claims 1 and 3 are not mentioned in appellant's brief and were not specifically discussed at the hearing. Under such circumstances we are of the opinion that this appeal is limited to claims 4 and 6, and only those claims will be considered.

We agree with the board that the Kannenberg and Hanert patents add nothing material to what is disclosed by the Hammond patent, so far as this appeal is concerned, and, accordingly, like

the board, we shall confine our consideration to the Muller and Hammond patents.

The Muller patent is pertinent only to the extent that it shows a piano having three strings for each key, which it would be possible to tune in the manner claimed by appellant. It is not contended that Muller discloses or suggests tuning the strings corresponding to one key to different pitches. It was the opinion of the examiner and the board, however, that since Hammond discloses the idea of providing three pitches for each key, one being standard, one slightly higher, and the other slightly lower, there would be no invention in tuning the strings of Muller's piano to produce the three frequencies called for by the appealed claims.

■ We agree with that position so far as appealed claim 4 is concerned. That claim merely defines the difference in tuning between the three strings of each note as being "a definite fraction of a semitone," which is true of the tuning described in the Hammond patent. Claim 4, therefore, calls for nothing more than applying Hammond's teaching to a piano of the type shown by Muller, by tuning the strings to frequencies such as are disclosed by Hammond. There is nothing to indicate that such a procedure would lead to any new or unexpected result and we are of the opinion that it would be obvious to a person skilled in the art. Appealed claim 6 is limited to a difference of one-third of a semitone between the strings of each key. It is alleged by appellant that such arrangement produces three tones when each key is struck, makes a considerable difference in the effect produced, and results in a richness which an ordinary piano cannot give. A demonstration comparing appellant's instrument with a conventionally tuned piano was made before the board and also before the court and we agree with the board that "The difference in result or effect was marked." Whether it was an improvement or otherwise is largely a matter of opinion and musical taste, but it is not unreasonable to suppose that it might be preferred by many listeners.

In the Hammond patent, on the other hand, the differences in pitch are not designed to produce distinct tones, but to give a so-called "chorus effect" such as results from the simultaneous playing of a number of instruments which are supposedly tuned to the same pitch. The differences in tuning in the Hammond instrument are therefore substantially smaller than in appellant's.

It was held by the Patent Office tribunals that the difference in tuning between appellant's instrument and that of Hammond involved nothing more than a matter of degree. It appears, however, that whereas appellant's frequencies are so selected as to produce differences in tone which are perceptible to the ear of the ordinary listener, Hammond is seeking to avoid that result, since he states that "the chorus effect is produced with such fidelity that the listener can ordinarily distinguish but a single tone even though, as a matter of fact, the tone is a composite tone of three sound waves of substantially the same frequency."

In our opinion Hammond not only fails to suggest the use of pitches of the order of difference recited in appealed claim 6, but clearly indicates that the differences should be kept substantially below such values and within such a range that the impression given by each key will be that of a single tone. Appellant, by a very simple expedient, has produced a markedly different tone effect, which is not fairly suggested by the cited references. Claim 6 properly defines appellant's advance over the prior art and, in our opinion, should have been allowed.

The decision of the Board of Appeals is modified, being affirmed as to claim 4 and reversed as to claim 6.

Modified.

JOHNSON, J., retired, dissents as to the allowance of claim 6.