30 C.C.P.A.(Patents)

**JONES v. WINSOR.**

Patent Appeal No. 4649.

Court of Customs and Patent Appeals.

Dec. 26, 1942.

Rehearing Denied Feb. 26, 1943.

M. E. Jones, of Washington, D. C., for appellant.

J. F. Mothershead and Carl D. McManamy, both of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This appeal brings before us for a review a decision of the Board of Appeals of the United States Patent Office in an interference proceeding, affirming the decision of the Examiner of Interferences awarding to appellee priority of invention with respect to all of the counts of the interference, seven in number.

Count 1 is illustrative of the subject matter of the counts and reads as follows:

"1. In combination with a source of electrical energy having a driving motor, means to establish an operating circuit from said source, said circuit also being the stopping and starting circuit for the driving motor, said means including a switch, and means also energized from said source operable to automatically close and hold said switch closed through the action of a load in the circuit of the source of electrical energy and automatically open said switch after removal of the load for a predetermined time."

The interference is between a patent issued to appellant on December 3, 1935, upon an application filed October 25, 1932, and an application of appellee filed January 23, 1936.

All of the counts were copied by appellee from appellant's patent for purposes of interference. Inasmuch as appellee's application was filed subsequent to the issuance of appellant's patent, the burden was upon appellee to establish priority of invention beyond a reasonable doubt.

As stated in the decision of the Examiner of Interferences the invention " * * * relates to arc-welding wherein the welding arc is supplied with current by a motor-generator set which is started automatically upon striking the arc to the work and which will be stopped after a short predetermined interval after the arc-welding is discontinued by removing the arc from the work."

Appellant's Preliminary Statement alleged conception of the invention about May 1, 1929, disclosure to others during the month of June 1929, and reduction to practice on July 17, 1929, and again on December 14, 1932.

Appellee's Preliminary Statement alleged conception of the invention about February 17, 1932, and its reduction to practice on or about February 19, 1932.

Only the junior party, Winsor, took testimony.

It appears from such testimony that at all the times hereinafter stated the appellant Jones, employed in Washington, D. C., was a technical electrical assistant in the Bureau of Construction and Repair of the United States Navy; and that appellee Winsor, an electrical engineer, was in charge of the electrical laboratory at the Puget Sound Navy Yard, Bremerton, Washington.

Thus it appears that both of the parties hereto were in the employ of the United States. Jones filed his application through an outside attorney, but subsequently at his request made on July 19, 1934, his ex parte application was prosecuted by the Judge Advocate General's Office of the Navy.

It appears that on said July 19, 1934, Jones addressed a letter to the Secretary of the Navy "Via: Chief of the Bureau of Construction and Repair," the pertinent portion of which reads as follows:

"1. An application for patent on automatically controlled electric circuits, Serial No. 639491, was filed by me on October 25, 1932. As the Navy Department is using devices to accomplish the same purpose on arc welding motor generators, I am desirous of permitting the Government to use my device.

"2. It is requested, therefore, that the Department prosecute the subject applica-

tion and transact all future business relative to the same. In this connection, a Power of Attorney is enclosed. In consideration of this I agree to execute a form of license satisfactory to the Secretary of the Navy, granting to the United States the right to manufacture and use this device for any and all governmental purposes, reserving to myself the commercial and foreign rights."

The record also contains the following letter:

"Jul. 27 1934.

"From: Bureau of Construction and Repair.

"To: Secretary of the Navy.

"Via: The Judge Advocate General.

"Subject: James L. Jones—Application for Patent on Automatically Controlled Electric Circuit, Serial No. 639491. (James L. Jones letter of 19 July 1934).

"Enclosure: (herewith)

"(A) Power of Attorney

"1. The attached letter and enclosure (A) are forwarded for necessary action. Mr. James L. Jones, Engineer (Electrical) is employed in this Bureau.

"2. The Bureau considers that the device mentioned is of sufficient value to make it advisable to protect the Government's rights therein by letters patent, and it is requested that the Office of the Judge Advocate General prosecute this application and transact all future business relative to the same.

"3. It will be noted that Mr. Jones agrees to execute license granting the United States all of the usual rights covering governmental use, reserving to himself the commercial and foreign rights under the patent and has executed the necessary Power of Attorney.

"A. H. Van Keuren,
"By direction."

It also appears from the record that on April 26, 1934, Winsor addressed a letter to the Secretary of the Navy, paragraphs 1 and 3 of which read as follows:

"1. Under the provisions of General Order #195, reference (a), it is requested that the Department institute patent application covering the automatic starting and stopping device described herein.

"3. It is believed that this invention falls under classification (b) of General Order #195. I am prepared to convey to the government a nonexclusive, irrevocable, and unlimited right to make and use, and have made for the government's use, devices embodying the invention and to sell such devices as provided for by law regarding the sale of public property."

Paragraph 2 of said letter describes in a general way the invention here involved, and references are made in the paragraph to diagrams enclosed and other correspondence between the Commandant of the Puget Sound Navy Yard and the Bureau of Construction and Repair, which it is stated give the details of the invention.

The record also shows that on August 6, 1934, the Assistant Secretary of the Navy addressed a letter to the Judge Advocate General of the Navy, which reads as follows:

"August 6, 1934.

"From: The Assistant Secretary of the Navy.

"To: The Judge Advocate General of the Navy.

"Subject: Invention of Arc Welder Automatic Start Stop Device by Thomas W. Winsor—Request for Patent application.

"1. It is requested that the necessary steps be taken to protect the Government's interest in the subject Invention by letters patent if same are obtainable.

"H. L. Roosevelt.

"CC to: Bucon, Nyd P.S."

Nowhere in the record does it appear that prior to the issuance of the Jones patent Winsor had any knowledge that the United States was prosecuting the Jones application, or that Winsor knew that any such application was in existence.

Upon final hearing before the Examiner of Interferences, Jones contended that Winsor was estopped from claiming the involved invention because of the fact that the disclosures of the Winsor and Jones applications were being concurrently considered by the Judge Advocate General's Office and that the Jones application was permitted to mature into a patent.

This contention is stated in appellant's brief before us as follows:

"1. The question of priority of invention is res adjudicata in favor of Jones.

"2. Regardless of dates of conception and reduction to practice, actual or constructive, Winsor by agreement and in law has conceded priority to Jones.

"3. The action of common attorneys in issuing the Jones patent while having control of the inventions and evidence of both

parties, and which attorneys in turn were in the employ of and controlled by the common licensee constituted an election or concession of priority by which the parties are bound.

"4. The United States Government having issued a patent to Jones while charged with knowledge and control of the evidence of both parties cannot issue a valid patent thereafter to Winsor."

The record shows that in May, 1934, Jones was aware of the fact that the matter of an application for a patent by Winsor was being considered by the Navy Department for prosecution, and did not turn his (Jones') application over to the United States for prosecution until after it appeared that Winsor's application would probably be prepared and prosecuted. Furthermore, the record shows that Jones suggested to Commander Wade, Jones' superior, that a letter from Winsor disclosing the invention should not be forwarded to the proper parties for the purpose of preparing a patent application in behalf of Winsor.

Upon this point Commander Wade testified as follows:

"Q. 43. During the period from the 19th of May 1934 to July 20, 1934, while the Winsor letter of exhibit 1 was in the Electrical-Mechanical section of the Bureau of Construction and Repair, have you any reason to believe that Mr. James L. Jones, the opposing party to this Interference, knew that this letter was in the Electrical-Mechanical section, and had knowledge of its contents? A. I do.

    *    *    *    *    *

"Q. 44. Will you please explain your reason for believing that, at that time, Mr. Jones knew of this Winsor letter of exhibit 1, and had knowledge of its contents.

    *    *    *    *    *

"A. I do, for the reason that it was during this period that Mr. Jones brought the letter to me and advised me that he had a similar patent pending in the hands of an outside attorney, and that it was his opinion that Bureau personnel should be given prior rights in applications for patents, for which reason he did not think this letter should be forwarded for patent application. I informed Mr. Jones that I was unable to comply with his request, and that, to whom the patent ultimately was to be granted was not a decision that I could make."

Although at the taking of said testimony Jones was represented by private counsel, there was no cross-examination with respect to the above quoted testimony.

With respect to this contention of estoppel against Winsor, the Examiner of Interferences held:

1. That upon the facts set forth in the record there was no estoppel against Winsor; and

2. That "this question of estoppel may not be considered at final hearing" since it had not been previously raised by way of a motion to dissolve the interference under Rule 122 of the Rules of Practice of the United States Patent Office, 35 U.S.C.A. Appendix.

The Examiner of Interferences further held that the issuance of the Jones patent in so far as this interference is concerned had no importance other than to place upon Winsor the burden of proving priority of invention beyond a reasonable doubt.

■ Upon the merits of the case, the examiner held that Winsor conceived and reduced to practice the invention prior to February 27, 1932, and as Jones upon the record is entitled only to the date of his application, October 25, 1932, for conception and constructive reduction to practice of the invention, priority thereof was awarded to Winsor.

Upon appeal to the Board of Appeals, the decision of the Examiner of Interferences was affirmed, the board holding that upon the facts of record no estoppel existed against Winsor, and that the evidence shows that Winsor conceived the invention and reduced it to practice prior to February 27, 1932.

■ The board did not discuss the holding of the examiner that the question of estoppel against Winsor may not be considered, because of Jones' failure to move to dissolve the interference under the provisions of Rule 122, supra, but the general affirmance by the board of the examiner's decision operated to affirm this holding of the examiner also. In re Wagenhorst, 20 C.C.P.A., Patents, 991, 64 F.2d 780.

While it is our opinion that had the Patent Office tribunals declined to consider Jones' claim of estoppel against Winsor upon the ground of Jones' failure within the motion period to move to dissolve the interference we would feel constrained to affirm such holding, in view of the peculiar facts in this case we prefer to rule upon the

question based upon the evidence in the record.

That the United States is not in the position of an assignee of both applications is plain. It is only a nonexclusive licensee and the parties, Winsor and Jones, each have separate and adverse interest. Consequently the doctrine of election by a common assignee has no application here, and the cases relied upon by Jones are not applicable.

As to the application of the general principle of equitable estoppel, we find nothing whatever in the record upon which an estoppel against Winsor could be based.

As hereinbefore stated, while Jones was aware that Winsor was seeking a patent upon the invention, it does not appear that at the time the Jones patent was issued, Winsor had any knowledge of Jones' application or of his claim to have invented the subject matter of the counts.

Under these circumstances, it would be most unconscionable to hold that Winsor should not be permitted to prove that he was the first inventor, and if he could establish that fact, receive an award of priority in this proceeding.

The Jones application should not have been prosecuted to issue in 1935 under the circumstances of this case, but action thereon should have been suspended until an application could be filed on behalf of Winsor, and an interference declared between the Winsor and Jones applications.

It appears that the prosecution of both applications was in charge of Commander Robert A. Lavender, who was Chief of the Patents Division of the office of the Judge Advocate General of the Navy from July, 1935, until February, 1938. This witness testified that he realized that there was interfering subject matter between the Jones application and the application of Winsor, which was ready for filing; that he had many conferences with Jones on the prosecution of his case; that he nevertheless permitted the Jones patent to issue before the Winsor application was filed. Upon this point the witness testified as follows:

"Q. * * * You stated that you questioned Jones relative to these sketches and commenced the investigation to which you have just testified, in December 1935 or January 1936, as I remember your answer; the Jones patent, as the official files show, was issued December 3d, 1935; was the questioning of Jones relative to his original sketches prior to or after the issue of his patent? A. I don't remember the exact dates, but I do remember that in determining the general procedure, the question of whether to allow the Jones patent to come out was considered and I knew that I could put the Winsor application into interference with either a patent or application, so that there was no object, one way or the other, of holding the Jones application in the Patent Office until after an interference was declared. * * *"

This is a most surprising statement of the witness. It would seem that he should have known that his action was very beneficial to Jones and detrimental to Winsor, inasmuch as such action placed the burden upon Winsor of proving priority of invention beyond a reasonable doubt. Jones has not been injured by any of the proceedings appearing in the record, but on the contrary he has received a patent for an invention to which it now appears from the record before us he was not entitled.

It should be here noted that there is not a scintilla of evidence in the record that either Commander Lavender or any other person associated with him prior to the issue of the Jones patent on December 3, 1935, ever formed or expressed an opinion upon the facts as to which of the parties, Jones or Winsor, was the first inventor.

Commander Lavender testified as follows: "Having received evasive answers and having had Mr. Jones being unable to explain his own invention, rather embarrassed me in the settlement of the situation, inasmuch as the power of attorney and the license agreement between both Winsor and Jones and the Government gave me the right to settle all interferences and I didn't desire, in view of all of the circumstances in the case, to exercise that right. Accordingly, when the papers were sent over to the Department of Justice, who appears before the Patent Office in all interference proceedings, I requested the Department of Justice to appoint different attorneys to represent Winsor and Jones, and suggested that a skilled attorney in one of the Patent Sections of the War Department, represent one of the parties, in order that there would be as great a separation as possible of the interests of the two parties. This was done by the Department of Justice and a Mr. Roach, of the War Department was appointed as attorney for Jones. I was further satisfied with this selection, inasmuch

as the brother of Mr. Jones, a patent attorney, was given full opportunity to be present at all hearings and all conferences on this subject."

With respect to the appointment of Mr. Roach, referred to in the above quotation, Jones' counsel in his brief states that Mr. Roach is deceased and the Government refused to further represent Jones.

There is nothing in the record to substantiate these statements, but it is pertinent to observe that Jones was represented by his present private counsel when the first testimony was taken in this interference proceeding on July 12, 1938, in the city of Washington. It also appears that since said time his present counsel has represented him, except that when the testimony was taken in the state of Washington no counsel appeared in behalf of Jones.

In support of his contention that estoppel lies against Winsor, Jones relies, in part, upon the case of Cold Metal Process Co. v. United Engineering & Foundry Co., 3 Cir., 107 F.2d 27, in which two patent applications by different persons for the same invention were being prosecuted by the same firm of attorneys before the Patent Office. Neither party knew what claims, if any, were contained in the other's application. Upon realizing the conflict of interest and without disclosing to either party the contents of the application of the other, said attorneys suggested to the owners of the respective applications that a meeting be held to see if any agreement could be entered into to protect the interests of both parties and to avoid litigation. Such a meeting was held, and an agreement was entered into, signed by the parties, in which it was agreed that claims for the common subject matter should be made in only one of the applications, and that if a patent was issued therefor the other party should be granted a license to make, use and sell the device covered by such claim. The court found the agreement above referred to was a valid subsisting contract.

Obviously said decision has no application to the facts in the case at bar. It is interesting to note, however, that the parties in the case last cited were involved in prior litigation relative to the same subject matter. Cold Metal Process Co. v. United Engineering & Foundry Co., D.C., 3 F. Supp. 120.

From the case last above cited, it appears that the evidence established full disclosure of the situation by the common attorneys to the respective parties, and an offer by said attorneys to withdraw as attorneys for both parties was made but declined and both parties directed the attorneys to prosecute both applications.

Here Winsor, so far as appears from the record, had no knowledge of Jones' application or any claim to the invention by him prior to the issue of the Jones patent, while Jones had knowledge of Winsor's claim to the invention and tried to persuade his superior to take no steps in behalf of Winsor toward making an application for a patent for the invention. There never was any contract between the parties hereto made directly or through counsel.

Neither appellant nor appellee has cited any authorities applicable to the facts of this case, and we have found none. The reason for such lack of authority may be that probably never before has it been urged in any court that estoppel exists against a party upon facts akin to the facts in this case.

We are in full agreement with the Patent Office tribunals that no estoppel in the form of res judicata or otherwise exists against Winsor, and that the question of actual priority of invention was properly considered by such tribunals.

Considering next the evidence in the case relating to priority of invention, we would first observe that we must accept as a fact that Winsor was the first to conceive the invention. Both of the Patent Office tribunals so found, and Jones' reasons of appeal before us do not challenge such finding, but only that there was no reduction to practice by Winsor of the invention prior to Jones' filing date, October 25, 1932.

Upon this question of reduction to practice, both of the Patent Office tribunals found that the invention was reduced to practice by Winsor prior to February 27, 1932.

We have examined the evidence upon which these findings were based. In our opinion it establishes beyond any reasonable doubt that Winsor was not only the first to conceive the invention, but reduced it to practice prior to February 27, 1932, as held by the Patent Office tribunals.

This evidence is so clear and convincing that we do not deem it necessary to further comment upon it.

Appellant's brief states: "If the first machine of Winsor were a reduction to

practice, then his lack of diligence has extended over practically a period of four years since Jones was in the field and his invention was known to Winsor's attorney, (the common attorney), which in law, was knowledge to Winsor."

We are unable to understand upon what theory appellant's counsel contends that there was any duty of diligence resting upon Winsor after reducing the invention to practice. It is elementary in patent law that after a party has reduced an invention to practice, he is not chargeable with diligence, unless a subsequent conceiver has reduced the invention to practice prior to its reduction by the first conceiver.

This is so well established that no citation of authorities is required.

It is true that after one has conceived an invention and reduced it to practice, he may lose any rights to an award of priority by suppression and concealment of the invention. Mason v. Hepburn, 13 App.D.C. 86, is the leading case upon this subject, and while it is cited in appellant's brief, there are no facts in this case which could possibly make that doctrine applicable.

One further matter requires brief comment.

Appellant's 7th reason of appeal reads as follows: 7. That the Board of Appeals erred in not holding that Winsor and privies had suppressed and failed to produce various pieces of evidence exclusively under their control creates the conclusive presumption that their production would have been adverse to Winsor.

In his brief appellant's counsel stresses this reason of appeal, but it is sufficient to say that there is no evidence in the record indicating that any evidence was suppressed. Counsel for appellant did make such a statement, but this, of course, cannot take the place of evidence. The only evidence in the record in any way bearing upon the subject is the testimony of Commander Lavender, who testified that Jones could not satisfactorily explain the operation of the circuit shown in his sketches, and Commander Lavender further testified as follows:

"At that time, Mr. Jones had no explanation for the inoperativeness of the circuit and requested that he be allowed to take the original sketches home with him, that he may have an opportunity to study them over, and, he assured me, that by the next day he could tell me how his circuits operated. I refused to allow him to have his original sketches on the ground that they had become part of the official records of the case, but furnished him with photostats of the circuits."

The above testimony related to a time long before this interference was declared, and there is no evidence that in this proceeding Jones ever made a demand upon the Government or upon opposing counsel herein which was refused for the production of the originals or photostatic copies of any papers relating to Jones' application for a patent.

As we do not find any reversible error in the decision appealed from it is affirmed.

Affirmed.